Case 39—PETITION—February 24.

# Treacy v. Elizabethtown, Lexington and Big Sandy Railroad Company.

APPEAL FROM FAYETTE CIRCUIT COURT.

1. EMINENT DOMAIN—CHANGE OF REMEDY.—As there is no element of a contract in a special remedy given to a railroad company to condemn land for its use, the Legislature has the power to repeal such a remedy, and substitute new remedies in its stead.

Treacy v. Elizabethtown, Lexington and Big Sandy Railroad Company.

2. SAME.—The general law of April 11, 1882, prescribing the mode of condemning land for the use of railroad companies, repealed the provisions of appellee's charter, being inconsistent therewith.

3. SAME—EFFECT OF REPEAL OF STATUTE.—The general law applies to the trial in the circuit court of proceedings for the condemnation of land which were begun prior to its passage, provided the railroad company had not, prior to the passage of the law, acquired title to the land by a compliance with the conditions precedent to its right to condemn the land under its charter, and thus left nothing to be determined but the amount of damages.

In 1880 appellee instituted a proceeding to condemn land belonging to appellant, and in February, 1880, the jury's inquest of damages was returned to and confirmed by the circuit court. This court, upon appeal, reversed the judgment of confirmation, upon the ground that appellee had not shown that the taking was for a public use, and that the land was necessary for that use, which were held to be conditions precedent to its right to condemn the land. Upon the return of the case the circuit court, in 1884, again confirmed the inquest. *Held—* That the case should have been tried *de novo*, as provided by the general law of 1882, and not tried in accordance with the provisions of appellee's charter.

W. LINDSAY FOR APPELLANT.

1. The act of 1882 applied to and repealed the provisions of the charters of all railroad corporations, so far as they provided for the condemnation of property, and substituted for them the uniform rule therein declared. (Acts of 1882, vol. 1, p. 83; Chattaroi R. R. Co. v. Kinner, 81 Ky., 221.)

2. The repeal of the law under which the proceedings are being had, renders them void from the beginning. (Hampton v. Commonwealth, 19 Penn., 329; Commonwealth v. Beatty, 1 Watts, 382; Baltimore R. R. Co. v. Nesbit, 10 Howard, 305; Mills on Eminent Domain, section 93, and authorities cited.)

Therefore, the court should, upon the return of this case after the reversal upon the former appeal, have discontinued the proceeding.

3. The reversal of a judgment irregularly obtained leaves the State free either to discontinue the proceeding, or to declare the rules by which it shall be conducted in future. (Garrison v. City of New York, 21 Wall., 204.)

4. As the necessity for the taking and the character of the use had not been ascertained in this case, the deposit with the sheriff of the damages assessed did not prejudice appellant.

Before the title can vest, the public use must first be determined, either by the Legislature or by some tribunal authorized by the Legislature. (Treacy v. R. R. Co., 80 Ky., 266; Mills on Eminent Domain, 10.)

The finding of the necessity for the taking cannot be dispensed with. Such a finding is a jurisdictional fact, without which all further proceedings are void. (People v. Town of Seward, 27 Barb., 94; McClarty v. Hartwell, 25 Mich., 139; Mills on Eminent Domain, sec. 275.)

5. But if the act of 1882 did not of its own force terminate this proceeding, it at least left it to progress in accordance with its provisions. (Chattaroi case, 81 Ky., pp. 222 and 223.)

Therefore appellant had the right to a new assessment of damages by a jury, to be governed by the provisions of that act.

6. But even if the act of 1869 is to govern in the further progress of this proceeding, the circuit court failed to carry out that law as construed in the opinion upon the former appeal. (80 Ky., 267.)

D. G. FALCONER ON SAME SIDE.

1. Upon the return of this case from this court the circuit court should have set aside the verdict and granted appellant a new trial. A jury should have been empaneled and evidence as to the necessity, use and damages heard. The court should then have determined how much, if any, of said property it was necessary to take for public use, and instructed the jury to find the damage for taking that much of said property. (Reed, &c., v. Louisville Bridge Co., 8 Bush, 71.)

2. There is no *necessity* shown for the taking of as much property as has been condemned. It is not sufficient that the *convenience* of appellee requires the taking. (Cooley's Const. Limit., 541.)

3. The amount allowed by the jury as damages is not a just compensation. Appellant is entitled, as damages, to the value of the property taken and compensation for any incidental or collateral damage which the taking will produce on his other property. Rich. & Lex. Turnpike Road Co. v. Rogers, 1 Duv., 135; 17 B. M., 173.)

4. The evidence of the jurors is competent to show that the verdict was arrived at in an improper manner.

It was unjust to appellant for the jury to take the average of the values found by the several jurors, and such a practice should not be sanctioned. (Allard v. Smith, 2 Met., 300.)

BRECKINRIDGE AND SHELBY FOR APPELLEE.

I. Upon the return of this case to the circuit court from this court, it was not necessary, and would not have been proper, to submit the case to another jury until the court should have adjudged, upon a re-trial, that the verdict ought to be set aside.

II. The only question to be determined under the mandate of this court was, whether the taking of the property was "reasonably necessary." (Treacy v. E., L. & B. S. R. R. Co., 80 Ky., 267.)

The proof in this case shows that the lawful necessity for taking

Treacy v. Elizabethtown, Lexington and Big Sandy Railroad Company.

the property exists. (Reed v. Louisville Bridge Co., 8 Bush, 72; Mills on Eminent Domain, secs. 58 and 59.)

III. If the lower court had the power at all to revise the verdict of the jury upon the matter of value, it ought not to have exercised it in this instance, because:

1. The jury which rendered this verdict four years before this trial personally inspected this property *as it was then*—a thing that the court could not do. (E., L. & B. S. R. R. Co. v. Combs.)

2. The verdict of a jury ought never to be disturbed unless it is clearly the result of passion or prejudice; and this principle is peculiarly applicable in a case like this, where the judge cannot view the ground nor affix any value.

3. The property has increased in value without any fault of appellee and by its *illegal* exclusion from possession.

4. The valuation put by the verdict upon the property as it then was is ample.

IV. But in this particular case the court ought not to have gone into the question of value at all, because:

1. Under appellee's charter the question of value is wholly left to the inquest jury. (Acts of 1869, vol. 1, p. 222, sec. 13 )

2. Under the former opinion in this case that question was *res adjudicata* (80 Ky., 266-7.)

Every question that *was* or *could have been* decided on an appeal is settled by the decision that is rendered. (Francis v. Gant, 80 Ky., 205; Davis v. Mc Corkle, 14 Bush, 746, and cases there cited; Smith v. Brannin, 79 Ky., 114; Hackworth v. Thompson, 3 Ky. Law Rep., 254; Moore v. Powers' Adm'r, 4 Ky. Law Rep., 536; Brown v. Crow's Heirs, Hardin, 443.)

V. It is not improper for the jury, where the question is one of damages, to agree to return as their verdict the average of the amounts fixed by the several jurors. (Heath v. Conway, 1 Bibb, 399; Phillips v Baxter, *Ibid.*, 400; Dow v. Fenno, 12 Pick., 521.)

The cases of Allard v. Smith, 2 Met., 297, and P. & E. R. R. Co. v Commonwealth, 80 Ky., 147, distinguished from the case at bar.

VI. But the testimony of jurors can not be received to impeach their verdict. (Steele's Heirs v. Logan, 3 Mar., 397; Heath v. Conway, 1 Bibb, 400; Lucas v. Cannon, 13 Bush, 651.)

SUPPLEMENTAL BRIEF IN REPLY TO BRIEF FOR APPELLANTS.

Appellant is precluded by the former judgment of this court from raising the point as to the act of April, 1882. (Davis v. McCorkle, 14 Bush, 746; Smith v. Brannin, 79 Ky., 114; Hackworth v. Thompson, 3 Ky. Law Rep., 254; Moore v. Bower's Adm'r, 4 Ky. Law Rep , 536.)

The act of April, 1882, ought not to be construed as applying to any proceedings pending at its passage. (C. & O. R. R. Co. v. Judge

Treacy. v. Elizabethtown, Lexington and Big Sandy Railroad Company.

Washington County Court, 10 Bush, 574; Cooley's Const. Limit., p. 370; Hedger v. Rennaker, 3 Met., 258; Lewis v. Harbin, 5 B. M., 564; Gaines v. Gaines, 9 B. M., 301.)

That act can not be construed so as to affect any rights acquired in the course and by virtue of proceedings pending when it took effect. (Chattaroi R. R. Co. v. Kinner, 81 Ky., 223; B. & S. R. R. Co. v. Nesbit, 10 Howard, 395; C. & L. R. R. v. Kenton Co. Ct., 12 B. Mon., 147-8; Gen. Stats., chap. 21, sec. 23.)

When the act of April, 1882, was passed, appellee had already acquired in the course of this proceeding, and by virtue of it, vested rights in the property in controversy. (Acts 1869, vol. 1, pp. 222-3, secs. 13 and 14; Acts 1871-2, vol. 2, pp. 24-5; Treacy v. E., L. & B. S. R. R. Co., 80 Ky, 268; H. & N. R. R. Co. v. Henderson, 17 B. Mon., 177.)

SAME COUNSEL IN PETITION FOR REHEARING.

1. When this cause was remanded to the circuit court in 1882, it was impossible for it to have held a new trial under the provisions of the act of April 11, 1882.

2. The opinion and mandate of this court directed the circuit court to grant a new trial of that cause, which could be held only under the provisions of the charter of appellee.

3. The former reversal and judgment of this court did not reverse or affect the verdict of the jury, but only reversed the judgment of the circuit court on the motion of appellee to confirm the verdict of the inquest jury.

4. This court decided that it was the duty of the circuit court to hear the parties as to the use and necessity of the land in controversy, and to that end alone was its mandate directed.

5. The act of April 11, 1882, had been in operation over two months when the mandate was issued on July 3, 1882, and the issual of this mandate was a judicial determination binding on the parties and on the circuit court that the charter of appellee was not *quoad hoc* affected by it. For, if that act controlled this case, then the mandate should have directed the proceeding to be dismissed.

6. Appellee had acquired certain rights under the former decision of this court, of which it could not be divested by subsequent legislation.

JUDGE BENNETT DELIVERED THE OPINION OF THE COURT.

This is the second time this proceeding has been in this court. (See 80th Kentucky Reports, page 259.) ·

Under the 13th and 14th sections of the appellee's charter (Session Acts 1869, vol. 6, pages 222-3) a jus-

tice of the peace, upon the application of the appellee, was authorized to issue a writ of *ad quod damnum;* and the sheriff, by virtue of the writ, was authorized to impanel a jury in the country to find for the owners the value of the land that the appellee " wanted," for the purpose of constructing its road ; also to assess the damages incidentally resulting to other land of the owners.   The jury's verdict was to be in writing, and returned to the office of the circuit clerk, to be either confirmed or set aside by the circuit court.   If the verdict was confirmed, it was to be recorded ; but if set aside, a new inquisition was ordered, which was to be held by the sheriff in the same manner as the first.

Immediately after the return of the first verdict, and whether the same was set aside and a new jury ordered or not, the appellee had the right to enter upon the land and construct its road ; and upon payment or tender of payment of the amount assessed, the appellee was clothed with the actual title to the property.

The Legislature of Kentucky passed a general act, which was approved April 11, 1882, prescribing the mode of condemning land for the use of railroad and turnpike companies.

The act provides in substance, that any railroad company authorized to construct and operate a railroad in this State, and being unable to contract with the owner of any land necessary for its use for the purchase thereof, may apply to the county court to appoint commissioners to assess the damages the owner of the land may be entitled to receive ; and thereupon it shall be the duty of the county court to appoint three commissioners to act in the premises.   That the commissioners

shall view the land and award to its owner the value.
That they shall return their award in writing to the
county court clerk's office.   That upon the application
of the company, in the manner indicated in the act, the
clerk shall issue process against the owner of the land,
citing him to show cause why the award should not be
affirmed.   And at the next regular term of court after
the owner shall have been summoned the length of time
required, it shall be the duty of the court to examine
the report and confirm it, if it shall appear to be in con-
formity to the act, provided no exceptions to the report
are filed.   If exceptions are filed by either party, then
the court shall empanel a jury to try the issue of fact
made by the exceptions.   If sufficient cause be not
shown for setting aside the verdict, the court shall enter
judgment in accordance with it.   Either party may ap-
peal to the circuit court of the county, and the appeal
shall be tried " *de novo*."   The act also repeals all acts
and parts of acts in conflict with it.

This court, in the case of Chattaroi Railroad Com-
pany v. Kinner, 81 Ky., 223, decided that the act
*supra* repealed all former acts, whether general or
special, which were in conflict with it ; and as there is
no element of a contract in a special remedy given to
a railroad company to condemn land for its use, the
Legislature has the power to repeal it, and substitute
new remedies in its stead.

The 13th and 14th sections of appellee's charter, as
well as the amendments thereto, which prescribed the
mode of condemning land for its use, were repealed by
the general act of the Legislature, approved April 11th,
1882.

Treacy v. Elizabethtown, Lexington and Big Sandy Railroad Company.

The appellee in 1880 attempted to have condemned for its use fifty feet off the rear end of a lot of land owned by appellant in the city of Lexington, upon which he was erecting a valuable and expensive livery and sale stable, which was nearly completed at the time. The jury's "inquest of damages" was returned to the circuit court in February, 1880, and the circuit court at its February term, 1880, confirmed the inquest. The appellant, Treacy, appealed from the judgment of confirmation to this court. This court in May, 1882, reversed the judgment of the lower court, and remanded the case for further proceedings consistent with the opinion.

After the return of the case to the lower court, it, at its special January term, 1884, heard the proof relative to the use for which the land was sought to be condemned, and the necessity for condemning it to that use, and damages the appellant sustained by reason of its condemnation to the use of the appellee, and thereupon again confirmed the inquest of the jury in the country.

From that judgment appellant again appeals to this court.

He contends that the appellee's charter relative to the mode of condemning land for its use, having been repealed by the act of 1882, the case, upon its return to the circuit court, should have been heard and tried *de novo*, in accordance with the provisions of the act of 1882, and not in accordance with the provisions of appellee's charter.

It is certain that the lower court re-tried the case in accordance with the appellee's charter. If the court

was right in this, then the judgment must be affirmed. If the court was wrong, and should have re-tried the case "*de novo*," as provided in the act of 1882, then the judgment must be reversed.

Sections 13 and 14 of appellee's charter, as well as the amendments thereto, which prescribed the mode of condemning land and other property for appellee's use, are in conflict with the provisions of the act of 1882, and were, therefore, repealed by the 9th section of that act.

If, therefore, the appellee's proceedings in the county were a sufficient compliance with the conditions precedent to its right to acquire right or title to the land, then the lower court should have re-tried the case under the provisions of the charter, because, in such a case, the appellee, having actually acquired a right to the property, by virtue of its charter remedies, the Legislature could not, by a subsequent act, repeal the charter remedy so as to change or affect the appellee's vested rights thereunder.

On the other hand, if the appellee failed to comply with the conditions precedent to its right to acquire right or title to the land, then the court should have proceeded to retry the case *de novo* under the act of 1882, because the appellee having acquired no vested right to the land or any interest therein by its proceeding, the repeal of the charter remedy left appellee without a right to proceed further under its charter. And it could only complete its right to condemn the land by conforming its proceedings to the provisions of the repealing act.

This court, upon the former appeal in this case (80

Ky., 266), decided that the appellee's right to take
the land depended upon two conditions : · 1st. That the
taking was for a public use ; and 2d. That the land was
necessary for that use.    That these conditions were pre-
cedent to the right of the appellee to take the land.
And that it devolved upon the appellee to show, affirm-
atively, the existence of these conditions before the
land could be legally condemned to its use.    And the
appellee ·having failed to show the existence of these
precedent conditions, the case was reversed, and re-
manded for proceedings consistent with the opinion.

If the appellee had complied with the conditions pre-
cedent to his right to have the land condemned, and the
case had been reversed simply because the jury misap-
prehended the merits of it, then the reversal could
not, under the charter, have affected any right or title
that the appellee acquired to the property by reason of
the first inquest of the jury, and the tender of the sum
awarded as damages to the owner.    But the reversal
was not because of the mere misapprehension of the
jury as to the proper measure of damages.    On the con-
trary, the reversal was based upon grounds which went
beyond that question, and which developed the fact
that the appellee had not complied with the conditions
precedent to its right to have the land condemned to
its use.    The establishment of these conditions was an
indispensable prerequisite to a legal condemnation of the
land ; and the failure of the appellee to manifest its
right to have the land condemned to its use, by estab-
lishing these indispensable precedent conditions, was
fatal to its proceeding to condemn the land.    And the
case having been reversed for these expressed reasons,

the inquest of damages by the jury was also neces-sarily reversed by implication. Therefore, when the case again came up in the circuit court for trial, it stood in legal contemplation upon the appellee's appli-cation or petition alone; and such being the status of the case, should the court have tried it under the law of 1882?

In the case of Springfield and Illinois Southeastern Railway Co. v. Hall, 67 Ill., 99, the court said: "This was a proceeding to condemn a right of way, com-menced under the act of 1852. Before the trial in the circuit court, the act of 1872 had taken effect, and the damages were assessed under the rule prescribed in that act. This was unquestionably right. The later act expressly repealed all conflicting provisions in the former, and where proceedings of this character were in fieri, it would necessarily follow that they must be completed under the new law. The State has the right to say on what terms it will allow its right of eminent domain to be exercised, so long as any thing remains to be done by the corporation in order to complete the condemnation of the land."

This court, in Chattaroi Railway Company v. Kinner, 81 Ky., 223, says: "But the Legislature has the power to enact any subsequent or amendatory law which reg-ulates the remedy for enforcing corporate rights and privileges, so it does not, under the guise of regulating the remedy, impair the obligation of the contract, or which only operates on the relations between the cor-poration and other persons before any contract between them has been concluded, and interferes with no vested rights of the corporation."

As before said, as the appellee failed to establish the conditions precedent to its right to condemn the land, it acquired no title to the land or any interest therein by the jury's inquest of damages, and the tender of the sum assessed to the appellant. Therefore, the circuit court should have proceeded to try the case *de novo*; and, upon the request of either party, a jury should have been empaneled to try the case.

The judgment is reversed, and the case is remanded, with directions to proceed consistently with this opinion.