## Kentucky Utilities Co. v. City of Paris et al.

(Decided Nov. 9, 1934.)

GORDON, LAURENT & OGDEN, DICKSON, BRADLEY & **BLAN-** TON, STOLL, MUIR, TOWNSEND & PARK for appellant.

RAYMOND CONNELL for appellee City of Paris.

LEO T. WOLFORD and BRUCE &. BULLITT and POPPEN-HUSEN, JOHNSTON, THOMPSON & COLE for appellee Fairbanks, Morse & Co.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Affirming.

The Kentucky Utilities Company is appealing from a judgment of the Bourbon circuit court sustaining a demurrer to and dismissing its petition whereby it sought to enjoin the city of Paris and Fairbanks, Morse & Co. from performing a contract made between them for the construction of a municipal electric plant and distribution system.

From this and records in other proceedings to which reference will be made, it appears that in 1909 the city of Paris, through its duly constituted authorities, sold an electric franchise which was later transferred and assigned to appellant. This franchise expired in 1929. Prior to and after the expiration thereof, appellant urged and insisted that the city authorities offer another franchise, and, having met with refusal, on October 23, 1930, instituted an action against the board of commissioners of the city of Paris seeking to compel them so to do. A judgment denying the relief sought was on appeal reversed, with directions to the lower court to enter judgment in accordance with the prayer of the petition. See Kentucky Utilities Company v. Board of Commissioners of the City of Paris et al., 254 Ky. 527, 71 S. W. (2d) 1024.

In the meantime, however, the board of commissioners of the city had, by resolution, submitted to the voters of the city the question of authorizing a bond issue of $150,000 to be expended for the erection and equipment of an electric plant for the purpose of supplying electric lights and current for all purposes to the citizens and residents of the city. Pursuant to notice, published as required by law, the question was submitted at the regular November election, 1930, and the bond issue was authorized by the voters. No question is made concerning the regularity or validity of the election or the steps preliminary thereto or the validity of the bonds authorized thereby. No further steps were taken looking to the erection of the electric plant until January 12, 1932, when the board of commissioners by resolution authorized the employment of engineers to make a preliminary survey, and on February 23, 1932,

the city entered into a contract with the engineering firm of Black & Veatch of Kansas City, Mo., employing them for this purpose. They set forth their findings and recommendations in an exhaustive report which was received by the board of commissioners at its meeting on May 3, 1932. On May 24, 1932, the board of commissioners by resolution authorized the managing agent of the city to prepare or to secure from reliable and competent engineers plans and specifications for a light and power plant together with a distribution system. On June 18 the board of commissioners adopted an ordinance which had been theretofore introduced, wherein, after reciting the facts concerning the holding of the election authorizing the issuance of the bonds, the submission to the board of commissioners of the plans and specifications and estimates of the cost of an electric plant and distribution system pursuant to resolution theretofore adopted, and the approval thereof by the commissioners of the public works of the city, it was provided in effect that the plans, specifications, etc., for the plant submitted by the managing agent of the city be approved, and that necessary advertisement be made and steps taken to secure bids for the construction of the electric plant and distribution system with all necessary appliances and equipment in accordance with the plans and specifications which had been filed and approved. Pursuant to publication of notice, as provided by the ordinance, bids were received. Appellee Fairbanks, Morse & Co. was the successful bidder, and the contract complained of was entered into between it and the city.

Appellant's petition sets out the provisions of the contract relative to equipment to be furnished and installed for the generation of electrical current, and alleges, in substance, that it is inadequate and will not generate current sufficient to meet the requirements of the city and the citizens; that its capacity is much smaller than the character of plant recommended in the report made by the firm of engineers employed by the city; that the city authorities, disregarding the advice of the engineer employed by them in many particulars set out in the petition, abused their discretion, acted arbitrarily and contrary to the interests and general welfare of the citizens and residents of Paris, and therefore the contract made with the Fairbanks, Morse & Co. is in contravention of public policy and void. It fur-

ther alleges that the board of commissioners acted arbitrarily and in abuse of their discretion in entering into the contract because of its terms and conditions relating to a guaranty as to the capacity of the machinery installed.

The provisions of the contract relating to the testing of the machinery provided in effect that the tests should be conducted by an engineer of the company who should be entirely in charge thereof, and that officials and employees of the city should be under the direction of the engineer of the company, who during the tests should be considered to be the agent of the city; and further that, if no tests were requested by the purchasers within ten days after the machinery was put into operation, or if such a test could not be properly conducted, by reason of any fault of the purchaser, then and in that event the company would not be bound by the guaranty, and the machinery would be considered as accepted by the purchaser. It is also averred that the contract is void and in contravention of the rights of the citizens of Paris because, under its terms, monthly payments made as the work progresses will be based exclusively upon the certificate of the engineer of the company as to the value of the work and that the work has been satisfactorily performed. It is further alleged that the contract is void, in that it provides that the title and ownership of the machinery, etc., specified in the contract shall remain in the company until paid for, or, if under the laws of the state the title thereto shall pass to the city under the contract, then the company shall have a lien thereon for the purchase price; that this provision of the contract is in direct contravention of section 27411-21, Kentucky Statutes Supp. 1933, which prohibits cities of the fourth class from mortgaging or incumbering any lighting system without authority so to do by a vote of the people, and that no such vote had been taken. It is further alleged that, if the contract is carried out and the plant constructed, the money derived from the sale of the bonds will have been expended for a plant wholly inadequate to serve the requirements of the city and its inhabitants, and which will fail to conform to such a plant as was authorized to be constructed by the voters when they approved the bond issue of $150,000 for the purpose of constructing a plant which would serve all the requirements of the city and its inhabitants for all purposes; that, by reason.

of the facts alleged, plaintiff, appellant here, who is a taxpayer and sues in its capacity as such, as well as other taxpayers of the city, will suffer great and irreparable injury, unless defendants, appellees here, are enjoined and restrained as prayed in the petition.

The petition prays that the contract be adjudged contrary to public policy and void, and that it be set aside and held for naught; that defendants be enjoined and restrained from performing any act under the terms thereof; that the city be enjoined from making any payments to its codefendant for any machinery, etc., referred to in the contract; that, pending a final decree, a temporary injunction be granted against defendants doing any of the above enumerated things and for costs and all proper relief.

Before the cause was submitted upon demurrer to the petition, appellant took two large volumes of evidence, and this has been brought up with the record, but, since only the sufficiency of the petition is involved on this appeal, it will be unnecessary to consider the evidence.

Before coming to a discussion of the major ground of attack upon the contract and the one upon which the decision of the chancellor apparently turned, we shall dispose of questions raised concerning the validity of certain provisions of the contract. Counsel for appellant apparently have abandoned the contention made by their pleading that the contract is void because of the provision to the effect that the title should remain in the seller until the purchase price for the machinery and equipment had been paid, or, if, under the laws of the state title passed to the city, then the seller should have a lien on the plant to secure the payment of the purchase price. The section of the statute (2741l-21) cited and relied on in appellant's pleading and the case of City of Sturgis v. Christenson Brothers Company, 235 Ky. 346, 31 S. W. (2d) 386, construing the section, do not support appellant's theory. In that case it was held in effect that in an original purchase of waterworks, etc., plants, the city might bond the plant without getting the assent of the voters, but that, having once acquired the plant, it could not bond or incumber it without such consent.

With respect to the provisions relating to the testing of the machinery for the plant and to the certifica-

tion for monthly payments as the work progressed, it is argued that the city has surrendered all its rights and authority in these matters and delegated same to engineers of the Fairbanks, Morse & Co. As regards the provisions relating to the testing, it is obvious that it was the intent of the parties that the company should retain control of the operation of its machinery until it was accepted, and that this control should continue during the testing, but it remained for the city authorities and not for the engineers of the company to determine whether the machinery and equipment successfully met the tests.

Concerning the provisions that monthly payment should be made upon the certification from the engineers in charge of the work, it is equally apparent that the provisions referred to the engineers acting for the city and not the company's engineers. The contract, while not couched in as specific terms as it might have been, is susceptible of no other reasonable construction, and, even if it were susceptible of two constructions, one of which would render it legal and the other invalid, it would then be the duty of this court to adopt the construction giving it effect and validity. Krausgill Piano Co. v. Federal Electric Company, 216 Ky. 470, 287 S. W. 962; C. & O. Ry. Co. v. City of Morehead, 223 Ky. 698, 4 S. W. (2d) 726; Pennsylvania Fire Insurance Company v. Cullin, 202 Ky. 107, 258 S. W. 965.

Coming to the main question, it is argued by counsel that the contract was void because, in executing it, the city commissioners attempted to exceed the limitation placed on their authority by the vote of the people, and in making the contract were acting (1) entirely without any authority whatsoever, or (2) in any event, were abusing a power possessed by them in attempting its exercise in an arbitrary and excessive manner.

To sustain the theory that the city commissioners were wholly without authority to make the contract, counsel invoke section 178 of our Constitution, which reads:

"All laws authorizing the borrowing of money by and on behalf of the commonwealth, county or other political subdivision of the state shall specify the purpose for which the money is to be used and the money so borrowed shall be used for no other purpose."

This section is couched in such concise and explicit language as to make it self-interpretative. If the city commissioners were attempting to divert money borrowed to acquire an electric plant, to erect or acquire a water system, to construct streets or sewers, or to any purpose whatsoever foreign to that for which it was borrowed, this section would unquestionably apply; however, it is not even contended that such action has been attempted or contemplated, but it is argued that the city commissioners have contracted to expend money for an electric plant that is inadequate to meet the needs of the city and the citizens; that, since in the resolution calling an election and in the notice of election published as required by law it is stated that the proceeds of the bonds were to be expended in building an electric plant for the purpose of supplying lights and electrical current for all purposes to the city and residents of Paris, Ky., it was thereby meant, and the voters so understood, that the plant would be adequate to meet all needs of the city and its citizens. Hence it is reasoned that, under the quoted provisions of the Constitution, and under the authority granted by the voters at the election, the city commissioners were limited in their power, and could only contract and expend the funds for a plant adequate to meet the requirements as above indicated.

Clearly, the language of the resolution and the notice of election is not susceptible of the construction given to it by counsel. As we view the matter, it merely provides for the submission to the voters of the proposition of issuing bonds and levying taxes to raise funds to be expended in the erection of an electric plant for the purpose of furnishing lights and for any other purpose for which electric current was used. Necessarily the voters so understood, and as a matter of common knowledge knew that the character and capacity of the plant to be acquired would be limited to the funds provided therefor. In urging their second ground of attack under the principal point assigned for reversal, counsel are met with the unvarying policy of this court not to interfere in the management of municipal affairs by officers chosen by the voters of the city and delegated with authority to act for it, unless it is clearly made to appear that they have been actuated by corruption or fraud or have exercised their power in an arbitrary, excessive, or capricious manner. Town of

234

LaGrange v. Overstreet, 141 Ky. 43, 132 S. W. 169, 31 L. R. A. (N. S.) 951; City of Middlesboro v. Byrd, 247 Ky. 348, 57 S. W. (2d) 49; Gathright v. H. M. Byllesby & Co., 154 Ky. 106, 157 S. W. 45; Masonic Widows' & Orphans' Home v. City of Corbin, 229 Ky. 375, 17 S. W. (2d) 215, and cases cited in those opinions.

All these authorities clearly indicate that courts are not to be concerned about the wisdom or policy of ordinances enacted by city authorities or the way and manner in which they discharge their duties so long as they act within the limitations prescribed by law and do not make arbitrary or excessive use of the power reposed in them.

In his opinion overruling the general demurrer of the city to plaintiff's petition, the chancellor said:

"The allegations of the petition, considered in connection with the attached exhibits, do not seem to me to be sufficient to warrant the court to interfere with the action of the City Commissioners, or to show that they have either exceeded their legal powers or abused their discretion, and, therefore, the general demurrer to the petition should be sustained and an order, conforming to this opinion, should be entered in this action."

Since we concur in the conclusion of the chancellor, it is unnecessary to consider the motion to dismiss the appeal on the ground that the contract has been fully performed and any judgment rendered would be of no effect.

Judgment affirmed.