## City of Paris et al. v. Kentucky Utilities Co.

March 3, 1939.

As Modified Dec. 8, 1939.

Raymond Connell for appellants.

Gordon, Laurent, Ogden & Galphin and Dickson, Bradley & Blanton for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

This is an appeal by the City of Paris, Kentucky (hereinafter called the City), from a judgment of the Bourbon circuit court sustaining a demurrer to and dismissing the petition of the City by which it sought a mandatory injunction against the Kentucky Utilities Company (hereinafter called the Utilities Company), to compel it to cease selling electric power in the City and to remove its poles and wire from the streets, alleys and other public ways of the City.

On November 11, 1909, the City granted an electric franchise to the Paris Electric Light Company for a period of twenty years, or until November 11, 1929. In December, 1923, this franchise was acquired by the Utilities Company, by assignment, and without extension or additional privileges or rights.

In October, 1930, the Board of Commissioners of the City adopted a resolution providing for an election to determine whether the City should incur an indebtedness for the purpose of constructing an electric light system,

which election was held in November, 1930, and the voters of the City approved the incurring of the indebtedness to build an electric light plant. The validity of the election and the incurring of the indebtedness became involved in litigation and was held valid by this court in Kentucky Utilities Company v. City of Paris, 248 Ky. 252, 58 S. W. (2d) 361. Thereafter, the City entered into a contract for the construction of the electric light plant, and the validity of that contract and the right to construct the plant was also upheld by this court in Kentucky Utilities Company v. Paris, 256 Ky. 226, 75 S. W. (2d) 1082, and the City constructed an electric light plant and has been operating it in competition with the Utilities Company in said City.

In October, 1932, the Utilities Company brought suit in the Bourbon circuit court, seeking a writ of mandamus to compel the Board of Commissioners of the City to offer a new electric franchise for sale as required by Section 2741m-1, of Carroll's Kentucky Statutes, 1930 Edition. This statute then read as follows:

"Provision for sale of new franchise in certain cities.—that at least eighteen months before the expiration of any franchise, acquired under, or prior to, the present Constitution, it shall be the duty of the proper legislative body or boards of all cities and towns of this Commonwealth, except cities of the first class, to provide for the sale of a similar franchise to the highest and best bidder on terms and conditions which shall be fair and reasonable to the public, to the corporation, and to the patrons of the corporation, and which shall specify the quality of service to be rendered.

"Provided: That if there is no public necessity for the kind of public utility in question and if the municipality shall desire to discontinue entirely the kind of service in question, then this section shall not apply."

In that suit, the City contended that that section of the statutes was unconstitutional, and the trial court sustained that contention and dismissed the petition. On the appeal of the case this court reversed the judgment of the Bourbon circuit court (Kentucky Utilities Company v. Board of Commissioners of Paris, 254 Ky. 527, 71 S. W. (2d) 1024), and the mandate of this court issued directing the circuit court to enter judgment in

conformity with the prayer of the Utilities Company's petition, which mandate was filed on November 26, 1934, and on November 28, 1934, a judgment was entered ordering the Board of Commissioners of the City "to take the necessary legislative and official action to provide for the sale of a municipal electric franchise to the highest and best bidder on terms and conditions which shall be fair and reasonable to the public, to the grantee, and to the patrons of the grantee, and which shall specify the character of the service to be rendered, rates, etc., and to that end adopt and take any and all steps necessary to offer an electric franchise for sale in said city as hereinbefore set out."

However, the Board of Commissioners took no steps to comply with that judgment. It is alleged in the petition that the parties were constantly negotiating as to the terms and conditions of the franchise to be offered for sale.

At the 1936 session of the Legislature (chapter 93) and before any franchise was offered for sale or other attempt made to carry out the judgment of the court, the Legislature amended Section 2741m-1 of the statutes. The amendment retained the original section but added to it this proviso:

"Provided: That if there is no public necessity for the kind of public utility in question and if the municipality shall desire to discontinue entirely the kind of service in question, or if the city owns or desires to own and operate a municipal plant to render the required service, then this Act shall not apply."

Conceiving the idea that the statute as amended had the effect of annulling the judgment entered November 28, 1934, requiring the Board of Commissioners of the City to offer for sale a franchise, on September 1, 1936, the Board of Commissioners adopted a resolution providing, in substance, that it was unnecessary for the City to offer an electric franchise for sale, and authorizing the city attorney to institute this suit to compel the Utilities Company to remove its electric plant and equipment from the City. Pursuant to that resolution this suit was filed and the Utilities Company filed a demurrer to the petition, which was sustained, and the City declining to plead further, judgment was entered dismissing the petition.

The contentions of the respective parties are: The City contends that since the terms of the judgment had not been carried out and a franchise actually offered for sale by the Board of Commissioners, the amendment to Section 2741m-1 had the effect of annulling the judgment and relieved the Board of Commissioners of the City from carrying out the terms of the judgment. The Utilities Company contends that by the judgment of November 28, 1934, it obtained a vested right which could not be impaired in any way by the action of the Legislature in amending Section 2741m-1 of the statutes and that the Board of Commissioners must offer a franchise for sale. Whether the Utilities Company obtained a vested right by virtue of the judgment, is the only question presented by this appeal.

There is some intimation in brief of the City, the appellant, that it is the contention of the Utilities Company that it is entitled to a franchise in the City by reason of the judgment referred to. However, the Utilities Company states in its brief that it never has, and does not now, make such a contention, but contends only that the judgment vested it with the right to have an electric franchise sold or offered for sale in accordance with the terms of the statutes and the judgment of the court, and that when the sale is held it has the right to bid at the sale and if its bid is the highest and best, the bid must be accepted and a franchise issued to it.

The City concedes that if the Utilities Company obtained a vested right under the judgment of the court referred to, the 1936 Act amending Section 2741m-1 cannot impair or take from the Utilities Company such right.

But the argument is that the statute in question is a procedural statute solely and that the judgment based upon that statute was also a procedural judgment and did not fix in the Utilities Company, or anyone else, a vested right.

It is true that a legislature may pass laws which affect remedies granted by prior statutes, and these laws have the effect of annulling the remedies afforded in a previous statute. If the 1936 amendatory Act had been passed before the judgment was entered, a different question might have been presented. It is the rule in this jurisdiction, and all others so far as we know, that where a suit has been instituted under a statute giving

a cause of action and a right to maintain such action, and once the action has been prosecuted to final judgment, and the rights of the parties fixed, such rights then become vested in the judgment, and thereafter a legislature can pass no law which impairs the validity of the vested right thus obtained.

In 12 C. J. page 984, the rule is stated as follows: "The Legislature may not, under the guise of an act affecting remedies annul, set aside or impair final judgments obtained before the passage of the Act."

And in 6 R. C. L. page 319, it is said:

"A judgment is a vested right of property that the Legislature cannot, by a retroactive law, either destroy or diminish its value in any respect."

It is further contended by the city that the granting of a franchise is a matter of public interest and, therefore, no private right was vested in the Utilities Company by virtue of the judgment. However, counsel for the City, in his brief, concedes that the statute in question was passed for the benefit of both the municipalities of the state and the owner of expiring franchises. In this statement we agree, since it has been so held in numerous Kentucky cases, and in other jurisdictions.

In Norris v. Kentucky State Telephone Company, 235 Ky. 234, 30 S. W. (2d) 960, 962, it is said:

"It [Section 2741m-1, Kentucky Statutes] was enacted, not only for the benefit of the city, but for the benefit of the owner of the expiring franchise, and to prevent his arbitrary exclusion from the city."

This principal was reaffirmed in Kentucky Utilities Company v. Board of Commissioners of Paris, supra. Also in City of Louisville v. Louisville Home Telephone Company, 6 Cir., 279 F. 949, 953, in holding Kentucky Statutes, Section 3037d-1 et seq., constitutional, wherein a like or similar question was involved, it is said:

"That one purpose of this statute was to protect from being arbitrarily ejected those public utilities whose franchise expired, and to do so by requiring procedure thereunder for the benefit of the company as well as for the benefit of the city, seems to us obvious upon its face; * * *."

See, also, to the same effect, Gathright v. H. M.

Byllesby & Company, 154 Ky. 106, 157 S. W. 45, wherein it is also held that the statute requiring a sale of a similar new franchise was passed for the benefit of the owner of the expiring franchise, he only can complain if the city offers a different franchise.

It is thus seen that the statute in question, Section 2741m-1, before its amendment by the 1936 Act, did not create a purely public right; nor did it create a purely private right; but it created both a public and private right—a public right for the benefit of the inhabitants of the city and a private right for the benefit of the Utilities Company, the holder of the expiring franchise, in that, the statute gave the Utilities Company the right of an opportunity to purchase a new franchise as provided in the statute.

The question here presented has been considered and determined in numerous other jurisdictions. In McCullough v. Virginia, 172 U. S. 102, 19 S. Ct. 134, 142, 43 L. Ed. 382, the state of Virginia issued refunding bonds and by an act of the Legislature of that state, in 1882, it was provided that coupons from these bonds could not be accepted by officers in payment of taxes; but that taxes could be recovered by a suit to establish the genuineness of the coupons and to obtain a refund of the taxes paid. In 1892 McCullough filed suit to obtain a refund of taxes paid and obtained judgment in his favor. Thereafter, in 1894, the Legislature passed an Act repealing the right to file suit to recover the taxes paid by taking credit for coupons. The judgment was obtained prior to the Act of 1894, but an appeal from the judgment was pending in the Court of Appeals of Virginia at the time of the passage of the 1894 Act. The litigation finally reached the Supreme Court of the United States, and it was argued in that court, as is here argued in the present case, that the passage of the 1894 Act had the effect of abating any rights McCullough obtained under the judgment. The Supreme Court held that by reason of the judgment McCullough had obtained a vested right which could not be impaired by any Act of the Legislature subsequent to the entry of the judgment. In the course of the opinion, among other things, the court said:

"* * * At the time the judgment was rendered in the circuit court of the city of Norfolk the act of 1882 was in force, and the judgment was right-

fully entered under the authority of that act. The writ of error to the court of appeals of the state brought the validity of that judgment into review, and the question presented to that court was whether, at the time it was rendered, it was rightful or not. If rightful, the plaintiff therein had a vested right, which no state legislation could disturb. It is not within the power of a legislature to take away rights which have been once vested by a judgment. Legislation may act on subsequent proceedings, may abate actions pending, but when those actions have passed into judgment the power of the legislature to disturb the rights created thereby ceases. So, properly, the court of appeals, in considering the question of the validity of this judgment, took no notice of the subsequent repeal of the act under which the judgment was obtained, and the inquiry in this court is not what effect the repealing act of 1894 had upon proceedings initiated thereafter, or pending at that time, but whether such a repeal devested a plaintiff in a judgment of the rights acquired by that judgment. And in that respect we have no doubt that the rights acquired by the judgment under the act of 1882 were not disturbed by a subsequent repeal of the statute.''

In Memphis v. United States, 97 U. S. 293, 24 L. Ed. 920, one Brown built or improved streets or sidewalks for the city of Memphis under a statute which provided for liens against abutting property owners to secure payment of the work done. Subsequently, the Supreme Court of Tennessee declared unconstitutional the act under which the work was done, and apparently, to remedy the inequitable situation, the Tennessee Legislature passed an Act authorizing any city to levy a tax to pay for work done under any statute declared unconstitutional. After the passage of the statute Brown brought a suit against Memphis to compel it by mandamus to levy the tax provided for in the statute. The mandamus was granted and shortly after the mandamus was issued the Legislature of Tennessee repealed the Act authorizing cities to levy such tax. It was argued that a right to a mandamus was purely a remedy and that Brown had lost all of his rights under the statute because the statute was repealed before the tax was levied. The Supreme Court rejected this argument and held that Brown's rights became vested by reason of the judg-

ment and mandamus, and that these vested rights could not be disturbed by the repeal of the statute. We think the case supra is precisely in point with the case at bar. The Utilities Company obtained its judgment against the Board of Commissioners of the City of Paris under and by virtue of a statute (Section 2741m-1) which made it the duty of municipalities to offer a new franchise for sale at or near the expiration of any present franchise so that the holder of expiring franchise might have an opportunity to purchase a new one. After the entry of the judgment, which was final, the Legislature amended the statute by adding thereto the proviso quoted above, and now contends as was contended in the cases supra, that the amendatory act abated all rights that the Utilities Company may have obtained by reason of the judgment. Such contention is plainly contrary to the authorities supra, and others which we will hereinafter notice.

Again, in Town of Strafford v. Town of Sharon, 61 Vt. 126, 17 A. 793, 794, 18 A. 308, 4 L. R. A. 499, the same or a similar question was involved. By an Act of 1882 the Legislature of Vermont provided that one town could recover judgment against another town for part of the expense of building a highway or bridge where the latter town was benefited thereby. In 1883 Strafford brought suit to collect from Sharon for part of the cost for building a highway connecting the two, towns, and in 1885 judgment was entered in favor of Strafford against Sharon for the latter's portion of the expense of the highway. In 1886 the statute under which the judgment was obtained was repealed and the burden of building highways put on the state. Sharon claimed that the repeal of the statute in 1886 annulled the judgment entered in 1885. The court held that the judgment became a vested property right which the repeal of the statute could not affect. The court said:

"Nor can it be urged in opposition to the foregoing considerations that there is but the substitution of one remedy for another, without involving the impairment of any contract right. Wherein consists this change of remedy? It is, in substance, the substitution of one for another party petitionee. The burdened town is now to seek its remedy from the State, while before it was obtained from the benefited town or towns. But in the case before us the petitionee has already sought and obtained its rem-

edy, in the form of a judgment against the petitioner, under the law as it stood at the time when the action was brought and prosecuted. It has fully perfected its right under the law. Shall the petitionee now be deprived of its established and adjudicated right, and sent back to begin de novo to again establish the same right, but against another party? Clearly this would be unconstitutional."

Also, in Merchants' Bank v. Ballou, 98 Va. 112, 32 S. E. 481, 44 L. R. A. 306, 81 Am. St. Rep. 715, a suit to determine priority of liens, the bank claimed under a deed of trust which had been executed before a notary who was an officer and stockholder of the bank. Under the law of Virginia at the time the deed of trust was executed, an acknowledgment taken before a notary who was an officer of the bank was void. After the deed of trust was executed, and after the judgment creditors had obtained their liens, the Legislature of Virginia passed a law declaring that the fact that a notary taking an acknowledgment was an officer of a corporation executing a deed or receiving the benefits of a deed should not impair the validity of the acknowledgment. It was held that the later statute could not have the effect of displacing the lien obtained by the judgment creditors. The court held that a judgment is such a vested property right that the Legislature cannot by a retroactive law, either destroy or diminish its value.

Again, in Hoyt Metal Company v. Atwood, 7 Cir., 289 F. 453, 454, in discussing a question involving the same principle as is here involved, the court said:

"That an accrued right of action is a vested property right is well settled * * *. Certainly a judgment is a vested property right. In 6 R. C. L. p. 319, we find the rule set forth correctly, we think: 'A judgment is such a vested right of property that the Legislature cannot by a retroactive law either destroy or diminish its value in any respect.' "

To support the city's contention that no vested right was obtained by the Utilities Company because the right secured by the statute and the judgment was a public right, as distinguished from a private right, the case of Pennsylvania v. Wheeling & Belmont Bridge Company, 18 How. 421, 431, 15 L. Ed. 435, is cited and relied on. A bridge was constructed across the Ohio River under an Act of the Legislature of Virginia. The

state of Pennsylvania brought suit to have the bridge removed on the ground that it was an obstruction to navigation, and obtained judgment ordering the removal of the bridge. However, after the judgment was obtained, Congress passed an Act declaring that the bridge was a lawful structure and establishing it as a postroad for mail. Pennsylvania still insisted that the bridge be removed on the grounds that the Act of Congress could not interfere with the judgment which had already been entered declaring that the bridge was an obstruction to navigation. The Supreme Court denied the contention of Pennsylvania on various grounds, one of which was that Congress had sole power to control navigation; and it was further pointed out that it would be a useless thing to enforce the judgment when the bridge could be rebuilt immediately in exactly the same way, since it had been declared to be no hindrance to navigation. It was further held that there was only a purely public right involved, and the court was careful to point out the distinction between a public and private right. The court said:

"But it is urged that the Act of Congress cannot have the effect and operation to annul the judgment of the court already rendered, or the rights determined thereby in favor of the plaintiff. This, as a general proposition, is certainly not to be denied, especially, as it respects adjudication upon the private rights of parties. When they have passed into judgment the right becomes absolute and it is the duty of the court to enforce it.

"The case before us, however, is distinguishable from this class of cases, so far as it respects that portion of the decree directing the abatement of the bridge. Its interference with the free navigation of the river constituted an obstruction of a public right secured by Acts of Congress."

The City also relies on the case of Baltimore & Susquehanna Railroad Company v. Nesbit, 10 How. 395, 13 L. Ed. 469. However, that case is distinguishable from the present one upon the ground, as pointed out in that opinion, that the proceeding had and relied upon was not binding on either party, hence no right had been vested before the legislative enactment purporting to affect the law in force at the time the procedure was had. And, to the same effect is Chattaroi Railway Company v. Kinner,

81 Ky. 221, relied on by the city, which was a suit by the railway Company to condemn land. Under the charter of the railway company it was authorized to condemn land by proceedings before a magistrate. In 1882 the Legislature passed a general statute controlling the condemnation of property. After this statute was passed the railway company condemned land under its charter provisions and the court held that the procedure was invalid because the Legislature had the right to control the procedure for condemning land. Also Treacy v. Elizabethtown and Big Sandy Railroad Company, 85 Ky. 270, 3 S. W. 168, 8 Ky. Law Rep. 922, which was also a suit to condemn land. That case was decided upon the ground that the judgment relied on was absolutely void, hence no rights under it had vested.

These authorities, supra, it appears to us, are conclusive that the Utilities Company, being the owner of an expiring franchise in the city of Paris, and having obtained a judgment requiring the Commissioners of the City to offer a new franchise for sale, fixing the rights of the parties under Section 2741m-1 before the 1936 Amendatory Act was passed, acquired a private, vested right which could not be impaired or otherwise affected by the subsequent amendment to the statute.

It follows that it is the duty of the Board of Commissioners of the City of Paris to offer a franchise for sale in conformity with the judgment of the court, at which sale the Utilities Company, or anyone else, except the City of Paris, has the right to bid.

Wherefore, the judgment is affirmed.

The Whole Court sitting.