## Kentucky Utilities Co. v. City of Paris.

March 24, 1944

Ogden, Galphin, Tarrant & Street, Squire R. Ogden, and Bradley & Blanton for appellant.

Raymond Connell for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Reversing.

The controversy presented on this appeal from a judgment adverse to appellant, rendered in a declaratory judgment proceeding, may be gathered from former opinions of this court. City of Paris v. Kentucky Utilities Co., 280 Ky. 492, 133 S. W. (2d) 559, contains a history of matters out of which this controversy springs, going back to the time in November, 1909, when franchise was granted to the Paris Electric Company, bringing the status down to 1939 when that opinion was rendered. The opinion shows that the original twenty year franchise was assigned in December, 1923, to appellant; that in 1930 by election the city was authorized to issue bonds to finance a municipal electric plant, and it pro-. ceeded to carry out its plans. 248 Ky. 252, 58 S. W. (2d)

361, and 256 Ky. 226, 75 S. W.. (2d) 1082. From November 11, 1929,,to the present time the private plant has operated without renewal of its franchise.

In October, 1932, appellant sought by action to require the city to offer a franchise under the terms of Sec. 2741m-1, 1930 Ed. Ky. Stats. In this action the city contended that the above section violated provisions of our Constitution and Sec. 10, Art 1 of the Federal Constitution. The chancellor held the act unconstitutional; we reversed and remanded the case with directions to enter judgment conforming to our opinion (Kentucky Utilities Co. v. Board of Com'rs, 254 Ky. 527, 71 S. W. (2d) 1024), and thereafter the lower court directed the order which, with the statute and amendment, are set out in our 280 Kentucky opinion.

Following entry of the order, though the two parties were intermittently endeavoring to negotiate terms, the commissioners took no steps to comply. The matter thus stood until September, 1936. In the interim the legislature had amended in part the 1926 Act, now 2741m-1, KS, 1936 Ed., 96.010 KRS. Reference will show that in the first paragraph the word "similar" was changed to "new," and there was added to the second paragraph (proviso) the words "or if the city owns or desires to own and operate a municipal plant to render the required service, then this Act shall not apply."

The city, taking the position that the amended statute annulled the judgment entered under our opinion, resolved that there was no necessity for the sale of a franchise, and sought to compel appellant to remove its equipment from the city. The petition was dismissed, and on appeal the contention of the city was as stated above; the company contending that under the statute as construed, and the judgment in conformity, it had a vested right to have a franchise offered for sale. The company did not contend (nor does it now) that it was entitled to more than an opportunity to bid on a franchise, as per statute and judgment, the city then conceding that if the company had such a vested right it could not impair it.

This court in an opinion delivered March 3, 1939, 280 Ky. 492, 133 S. W. (2d) 559, held the right to have been vested under the former judgment. The effect was to require the city to offer a franchise for sale in

accordance with the judgment entered under our 1933 opinion, 254 Ky. 527, 71 S. W. (2d) 1024, which to all intents and purposes tracked the 1926 statute.

We gather from the present record that following the last mentioned opinion there were further efforts to agree upon terms of a franchise, and later, up until the filing of the instant suit, discussions as to whether the city or the company should institute suit to test the question of validity of a proposed ordinance. These efforts availed nothing, so on January 16, 1940, the city passed an ordinance announcing that they would offer for sale at public auction at 4 p. m., July 19, 1940, an electric franchise as set up in the ordinance. Conceiving the terms embodied in the proposals to be unjust and not in compliance with the statute, or the law of the case as pronounced in our two opinions, the company on July 17, 1940, filed its petition in the form of a declaratory judgment action, seeking to have the court prevent the proposed sale. The petition set out in detail the history and results of the previous litigation, making copy of the ordinance a part. It alleged that the ordinance, due to its restrictive terms, manifested a fixed purpose of the city to further evade the statute and the judgments. It pointed out, and this seems to be the most serious objection, that Sec. 20 limited the life of the franchise to a period of two years "from and after the date the same shall take effect." It also complained of the following restrictions set up in the ordinance which are said to be unreasonable and beyond the power of the city to demand: (3) That the grantee should not lay, relay, operate or maintain service equipment over or upon the city streets without permit from the city. (5 and 6) The grantee was to be excluded from maintaining facilities for service within a named portion of Main Street. (12) That the grantee be required to test all meters at least once in every two years; (14) turn over each year to the city such deposits as subscribers to service paid before installation, when service be discontinued. (15) The grantee shall furnish to the grantor when requested, information concerning the value of equipment and facilities, and costs, opening its books on demand for inspection by city officers.

As being persuasive of the charge that the city has manifested a fixed purpose not to comply with the

court's judgment, it is pointed out that the preamble contains recitals which are of embarrassment; for instance, that by vote of the people the city has acquired and is operating its own system, and is adequate; that bonds are outstanding but are to be met by income from the plant. Proof shows that all bonds can in reason be retired in eight years. Again that the company has operated for some time without franchise. "Against the consent of the city" it has been required to advertise sale of franchise, which will create competition. That there is no necessity for further electric service in the city and it "deems it advisable to reject the highest bid for said franchise if made by any one other than the holder of the expired franchise." That the city desires to offer a franchise "in conformity with the judgment of the court, but only for the least number of years consistent with the law and consistent with the peculiar circumstances existing in the city." These statements, to all practical purposes, illustrate the defensive matter set up in answer by the city.

Appellant alleged that it expected to become a bidder if the franchise offered substantially complied with the statute and the court's orders. It alleged that it had expended large sums of money in building and improving its system, and that under the rates charged it could not reasonably amortize its investments in the Paris plant. Under these allegations which are stated in substance, it was asked that the court prevent a sale under the proposed ordinance, and direct the city to offer a franchise containing fair terms and conditions.

There was filed as part of the petition "Exhibit C," which was a proposal prepared according to appellant's idea of fairness to all parties, and as being similar to the one under which it formerly operated, and the court was asked to require the city to advertise in accordance with it. Appellant prayed the court to declare the proposed ordinance to be arbitrary and unreasonable, not conformable to the statute and judgment, and for restraining order to prevent the sale of the proposed franchise.

The city by answer denied all the allegations of the petition, except historical and record facts. In its affirmative plea it went into detail in reciting history, beginning with the first franchise sold. It alleged that the city had expended large sums in building, equipping

and operating its plant, and that competition in the sale of electricity would retard the retirement of its bonded indebtedness. The proof shows a healthy financial condition of the municipal plant, and that without unforeseen circumstances it could reasonably expect to retire its obligations in eight years.

Without further analysis of the answer, we think we are safe in saying that the defense is epitomized in this quotation: "That under the circumstances peculiar to the existing condition in the City of Paris, the terms and conditions of the franchise ordinance enacted by the city on January 16, 1940, were and are fair to the city, the Utilities Company, the grantee and the patrons of the grantee and the Utilities Company."

Considerable proof was taken, mainly by the city, to uphold the allegations of its answer. There was some proof relative to the effect of the issuance of a restraining order, or the failure of service thereof (and summons) on proper officers of the city. Upon submission the chancellor, after adjudging on procedural question, and reciting some history, held that the municipal plant was adequate to supply the city and its inhabitants; that competition was against the best interest of the taxpayers who carried the burden of meeting the bond obligations. He held the word "similar," as used in the statute, to refer to the "kind" of service to be rendered, and not a franchise based on the "same terms and conditions as included in the previously granted franchise;" that the act "involved does not intend to prevent the terms and conditions of the new franchise from being changed to meet new arising conditions in the city to be affected." We agree on this last conclusion, though it may be submitted that the use of the word "similar" in the first paragraph of 2741M-1, Ky. Stats., and the use of the word "kind" in the second paragraph and proviso, would tend to indicate that where the old franchise is about to expire the city should offer a franchise "nearly corresponding, resembling, having a general likeness" to the old franchise, subject, as the chancellor says to change of conditions. The court pointed out that the company had enjoyed privileges of operation since 1929, without, but to the same extent as if operating under, a franchise, which fact should be taken into consideration in determining the fairness of the 1940 offer, considering also the other circumstances and con-

ditions existing in the city. With these views expressed the chancellor held that the proposed ordinance constituted compliance with the previous judgment and the statute; that "Exhibit C" did not contain terms and conditions fair or reasonable to the city and to the public. He directed dismissal of appellant's petition and this appeal is prosecuted.

There is considerable controversy here in respect of the temporary restraining order granted by the clerk to prevent the authorities from offering the proposed ordinance at the time stated. This was not served on the mayor or city attorney, Civil Code of Prac. Sec. 51, subd. 2, who were not found at the time, but was served on the mayor pro tem (KRS 89.140) who it developed was the officer present at the meeting and conducting the proceedings at which sale was only attempted, since there were no bidders. The chancellor held the restraining order to be in effect at the time of the meeting, a matter which need not be discussed since this question is raised here on cross-appeal granted not by this court but by the lower court. Section 755, Civil Code of Practice and Center v. Rose, 252 Ky. 463, 67 S. W. (2d) 698; Davis v. Rose, 278 Ky. 752, 129 S. W. (2d) 530.

The contention of appellee here, in the main, is that the defining and granting of a local franchise is a function of the municipalities' legislative board and the General Assembly; that this being true courts are without power to interfere with or enjoin such boards in the exercise of discretion in granting a local franchise. Finally it is argued that the ordinance adopted and proposed by the city is a full compliance with the duties imposed by the statute and the judgment, "under the peculiar circumstances existing in the city."

It may be conceded that as a general proposition the first two points are sound, and this court has never undertaken to control such matters coming under the jurisdiction of legislative bodies in submitting a franchise proposal. We have held under the applicable laws that substantial rights are created by the acquisition, for the benefit of the owner of an expiring franchise. Gathright v. H. M. Byllesby & Co., 154 Ky. 106, 157 S. W. 45; City of Louisville v. Louisville Home Telephone Co., 6 Cir., 279 F. 949; Norris v. Kentucky State Telephone Co., 235 Ky. 234, 30 S. W. (2d) 960. These opinions make it manifest that while we may not

undertake to say just what should be the terms and condition of a franchise, we may, as is indicated, in these and other cases, determine whether or not the franchise comports with the requirements of the statute in fairness to interested parties; to determine whether or not there was "arbitrary action on the part" of the granting authorities.

Our first opinion did more than to construe the statute fairly in respect of the duties and powers of the city; it set out the rights of a grantee. In the later case (280 Ky. 492, 133 S. W. (2d) 560) we set out the judgment entered following the first appeal requiring the city to offer a franchise "on terms and conditions which shall be fair and reasonable * * * to the grantee, and to the patrons of the grantee," then directed the city to prepare a franchise in conformity with that judgment. This is the law, regardless of conditions existing in the city, though all conditions, including those peculiar to the grantee, may be taken into consideration in determining whether or not the ordinance proposed be fair to the grantee and its patrons.

As we view the whole case, the main question is whether or not it is fair to the company, the holder of the expiring franchise, to limit the proposed franchise to a term of two years, we take it "from and after the date when same shall take effect." We have no difficulty in concluding from the record before us that the city has been derelict in its statutory duty to comply with the statute. It does not appear that it undertook to offer a franchise eighteen months, or at any time, prior to the expiration of the old franchise. Our 1933 opinion (Kentucky Utilities Co. v. Board of Com'rs of City of Paris, 254 Ky. 527, 71 S. W. (2d) 1024) directed the court to enter judgment in accordance with the prayer of appellant's petition. The 1939 opinion (280 Ky. 492, 133 S. W. (2d) 559 directed a compliance, but nothing was done for six months thereafter. From these facts and others which may be gathered from the record, it is not going too far to say that the city manifested an intention of non-compliance, or of delay as long as possible.

It is undisputed that the old franchise expired in November, 1929. The company, more than eighteen months before expiration, requested sale of franchise, and since said time "has repeatedly requested the legislative body" to offer for sale a franchise. 1933 opinion.

In October, 1930, it filed the suit referred to in the 1933 case (254 Ky. 527, 71 S. W. (2d) 1024, 1025), and later refused to act. It is true the record shows efforts of the parties to come to some agreement as to form of franchise, but this fact did not excuse the city from complying in some manner with the law, which it did not undertake to do until 1940.

It is also true, as said by the chancellor, the company has exercised privileges for a period of eleven years (at date of judgment) now approximately fourteen years, without holding a franchise, but this privilege was exercised by reason of the failure of compliance with the judgment entered under our 1934 decision. 254 Ky. 527, 75 S. W. (2d) 1024. This fact, as well as changes of conditions and the peculiar circumstances existing in the city, should be taken into consideration in determining whether or not the limitation of two years is fair.

Counsel for appellant realizes that it would be improper, or at least this court might be unwilling, to definitely fix the period for which the franchise should be granted. It is suggested that the court "might well state what, within limits, might be considered a franchise similar to the one formerly owned by the company." We can go so far as to say in this respect, that we conclude that under all the facts and circumstances peculiar to the city or otherwise that the limited period of two years is unreasonable. We may only venture as a suggestion to the authorities, whose duty it is to offer the franchise, in view of the fact that the usual and general custom (as is stipulated) is to grant franchise for utility purposes for a period of twenty years, that here it would appear at least fair to all parties concerned to fix a period not less than ten years from the date of sale. This is not to be taken as binding on a court which should be called upon to determine the fairness of the proposal, but is addressed to the granting authorities who in fixing the period should take into consideration the vested rights of the grantee.

We refrain from discussion or comment upon the court's ruling as to appellant's insistence that the chancellor should have approved its proposal of terms and conditions. To do so would, perhaps, be an invasion of the powers delegated to the municipality. The petition of appellant alleges that all the restrictions, save the

two year term limit, are in contravention with rules and regulations of the Public Service Commission. Some of them seem so to be, and would if incorporated not deprive the commission of regulatory control. The most we may say on this point is that the city in preparing an ordinance for sale of franchise should have little difficulty in preparing and presenting an ordinance in compliance with the statute by observing first the statute under consideration, the two opinions heretofore rendered on the subject, the provisions of the Public Service Commission Act, 278.010 et seq. KRS, and the opinion in Peoples Gas Co. of Kentucky v. City of Barbourville, 291 Ky. 805, 165 S. W. (2d) 567, in which we held certain powers vested in the city should be so exercised as to provide for a franchise capable of furnishing the contemplated service, and for guarantees that the grantee will perform the obligations imposed "provided that they are not so burdensome as to prevent the utility [company] from operating at a profit."

Some of the restrictive provisions, which tend to show a purpose of the city to make the grantee's duties more burdensome than authorized, should be eliminated; an example is the one requiring the grantee to turn over service deposits to the city. It may be submitted that the grantee will be primarily and wholly responsible for a return of such deposits, when service ceases, as seems to be provided in our escheat statute, particularly 393.080, KRS. The preamble of the ordinance contains much for which there is no apparent necessity. They contain statements which would tend to frighten a prospective bidder, but since the city has declared its purpose to consider a bid only from the former holder, the preamble is merely a space filler.

Our conclusion on the whole case is that the chancellor was in error in holding the two year limit period to be fair to the grantee and its patrons. Our conclusions expressed make it unnecessary to discuss his rulings on "Exhibit C." Under our ruling it will be necessary for the city to comply with the statute and judgment of the court, in which event it may, if it chooses, adopt "Exhibit C," or such proposal as will more nearly comport with the statute, the former judgment, and this opinion.

Judgment reversed with directions to set aside so much thereof as holds the ordinance to be in compliance with the statute in question.