## Kentucky Utilities Co. v. Board of Commissioners of City of Paris et al.

(Decided Dec. 15, 1933.)

528

DICKSON, BRADLEY & BLANTON and GORDON, LAURENT & OGDEN for appellant.

RAYMOND CONNELL for appellees.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

The questions presented on this appeal are: First, the constitutionality of chapter 137 of the Acts of 1926, now embraced in sections 2741m-1 and 2741m-2 of the Statutes; secondly, if constitutional, the construction to be placed upon it; and, thirdly, whether or not appellant has been guilty of laches or is estopped now to assert its alleged rights in this action.

The appellant, Kentucky Utilities Company, which was the plaintiff below, is engaged in the business, among others, of manufacturing, distributing, and selling electrical energy. In 1909, the city of Paris, through its governing body, sold an electric franchise to the Paris Electric Light Company. This franchise by mesne assignments has come into the ownership of the appellant. Under this franchise, the predecessors in title of appellant established an electric plant and distribution system for the purpose of supplying the city of Paris and its inhabitants with electricity and has so supplied the city and its inhabitants since that time. Many hundreds of thousands of dollars have been invested by the appellant and its predecessors in title in the plant and distribution system. The franchise by its terms and under the Constitution expired in 1929. More than eighteen months prior to the expiration of the franchise, the appellant requested, and since that time has repeatedly requested the legislative body of the city of Paris, including the present mayor and board of commissioners, the appellees herein, to offer for sale to the highest and best bidder a municipal electric franchise similar to that expiring in 1929, containing terms and

conditions fair and reasonable to the public, to the prospective grantee of such franchise, and to the patrons of such prospective grantee, and specifying the quality of service to be rendered. The appellees and their predecessors in office have consistently and without exception refused to comply with this request. It seems as though the city of Paris was then planning to install a municipally owned electric lighting plant to supply the city and its inhabitants with electrical energy, and it did not wish that such plant, if installed, should be subjected to competition from private ownership. The city has since constructed and installed such municipally owned lighting plant. On October 23, 1930, the appellant filed the present suit to compel the appellees to offer such a franchise as above described, basing its claim to the relief sought on chapter 137 of the Acts of 1926, the first section of which, now section 2741m-1 of the Kentucky Statutes, reads:

"That at least eighteen months before the expiration of any franchise, acquired under, or prior to, the present Constitution, it shall be the duty of the proper legislative body or boards of all cities and towns of this Commonwealth, except cities of the first class, to provide for the sale of a similar franchise to the highest and best bidder on terms and conditions which shall be fair and reasonable to the public, to the corporation, and to the patrons of the corporation, and which shall specify the quality of service to be rendered. Provided: that if there is no public necessity for the kind of public utility in question and if the municipality shall desire to discontinue entirely the kind of service in question, then this section shall not apply."

The pleadings filed by the parties presented the issues as above stated. The lower court held that chapter 127 of the Acts of 1926 was unconstitutional and dismissed the petition of the appellant. From that judgment, this appeal is prosecuted.

Addressing ourselves to the question of the constitutionality of this chapter 137 of the Acts of 1926, we find that it is assailed on the ground that it contravenes sections 163, 164, 19, 181, and 51 of the Constitution of Kentucky, and section 10 of article 1 of the Constitution of the United States.

Chapter 137 of the Acts of 1926 applies to all classes

of cities of the commonwealth except cities of the first class. As to them, the Legislature in 1904 passed an act (chapter 81) substantially identical in its terms with chapter 137 of the Acts of 1926, and which is now known as section 3037d-1 of the Statutes. So far as exhaustive research on the part of the learned counsel in this case and our own study of the precedents are concerned, no case has been found expressly passing on the constitutionality either of the act of 1904 or of the act of 1926, excepting that of City of Louisville v. Louisville Home Telephone Company (C. C. A.) 279 F. 949, to which more extended reference will hereafter be made. It is true that these acts have been before this court in several cases, but in each of them their validity has been assumed without discussion. In the case of Gathright v. H. M. Byllesby & Co., 154 Ky. 106, 157 S. W. 45, 54, reference was made to a judgment theretofore entered in the Jefferson circuit court in the case of Underwood v. Kentucky Heating Company and City of Louisville, which was never appealed. In the Underwood Case, the city had sought by cross-petition to eject the heating company from the streets because its franchise had expired. The Jefferson circuit court held that, because the city had failed to offer for sale a similar franchise as provided in section 3037d-1 of the Statutes, it was not entitled to the relief sought. In referring to this in the Gathright Case, this court said:

"If the Kentucky Heating Company should choose to require the city to carry out the judgment of the chancellor, by offering a franchise similar to its expired franchise, the city will have to do so."

In the case of City of Ludlow v. Union Light, Heat & Power Co., 231 Ky. 813, 22 S. W. (2d) 909, 910, the franchise of the utility company having expired, a new one was offered for sale. The municipality refused to accept the bid of the owner of the expiring franchise for the new franchise. In setting out the mutual rights of the parties on the expiration of a franchise, this court said:

"The grant and acceptance of a franchise is but a contract, and its obligations are binding on both parties. A contract expires according to its terms. In accordance with the constitutional limitation, the contract entered into between appellant and appellee in 1909 expired at the end of 20 years.

There was no contractual relation between the parties after that period. Board of Education of Somerset v. Kentucky Utilities Co., 231 Ky. 484, 21 S. W. [2d] 817. It is universally held that, when a franchise contract terminates, the mutual rights and liabilities are at an end. The property used by the franchise owner does not cease to be its property, and it has the right to remove it from the streets, and, upon failure to exercise that right, may be compelled to do so. However, the courts in the interest of justice and equity have held that a reasonable time should be given for the removal of the physical properties, for, obviously, there could be no instant removal on a discontinuance of the service; also under some circumstances courts of equity have interposed their powers to prevent a discontinuance of service for the time being, as has been done in this very case, until the rights of the parties could be fully adjudicated.

"In anticipation of the difficulties which might be encountered, the General Assembly at its 1926 session directed that the legislative body of a municipality should provide at least 18 months before the expiration of any franchise for the sale of a similar franchise."

Lastly, in the case of Norris v. Kentucky State Telephone Co., 235 Ky. 234, 30 S. W. (2d) 960, 962, the franchise of a telephone company had expired in 1923. The municipality did not heed the request of the telephone company to offer a new franchise in accordance with the 1926 act, until November of that year. The telephone company was the only bidder for the franchise, which was finally offered and that bid was in April, 1927, rejected. The municipality undertaking to force the telephone company from its streets, suit was brought by the telephone company to enjoin the city from interfering with its telephone lines and to compel it to accept the bid of the telephone company which had been rejected. In granting the relief sought, this court, after quoting the 1926 act, said:

"This statute, though mandatory in its other provisions, is merely directory as to time. It was enacted, not only for the benefit of the city, but for the benefit of the owner of the expiring franchise, and to prevent his arbitrary exclusion from the city.

Gathright v. H. M. Byllesby & Co., 154 Ky. 106, 157 S. W. 45; City of Louisville v. Louisville Home Telephone Co. [C. C. A.] 279 F. 949. It is apparent, therefore, that, when the statute and the controlling provision of the constitution are considered together, there is no room for arbitrary or corrupt action on the part of the city council."

It will be noted that in none of these three cases was the constitutionality either of the 1904 or of the 1926 act discussed or decided save by inference. The instant case is the first one in this court in which the constitutionality of these acts has been squarely challenged. The principal attack on the constitutionality of these acts, and especially that of 1926, is based on the asserted violation by them of sections 163 and 164 of the Constitution of Kentucky. Those sections provide:

"§ 163. No street railway, gas, water, steam heating, telephone, or electric light company, within a city or town, shall be permitted or authorized to construct its tracks, lay its pipes or mains, or erect its poles, posts or other apparatus along, over, under or across the streets, alleys or public grounds of a city or town, without the consent of the proper legislative bodies or boards of such city or town being first obtained; but when charters have been heretofore granted conferring such rights, and work has in good faith been begun thereunder, the provisions of this section shall not apply.

"§ 164. No county, city, town, taxing district or other municipality shall be authorized or permitted to grant any franchise or privilege, or make any contract in reference thereto, for a term exceeding twenty years. Before granting such franchise or privilege for a term of years, such municipality shall first, after due advertisement, receive bids therefor publicly, and award the same to the highest and best bidder; but it shall have the right to reject any or all bids. This section shall not apply to a trunk railway."

That the defining and granting of a franchise is the exercise of a legislative function of the sovereignty must be and indeed is conceded by counsel on both sides. Thus, in the case of Slade v. City of Lexington, 121 S. W. 621, 622, we said:

"The authorities are practically agreed that an ordinance defining and granting a franchise is the exercise of a legislative function."

The power to grant franchises as an original proposition inheres in the sovereignty of the state which may by constitutional or statutory provisions delegate that right to a local political subdivision such as a municipality. Thus in the case of Irvine Toll Bridge Co. v. Estill County, 210 Ky. 170, 275 S. W. 634, 636, we said:

"A franchise 'is the privilege of doing that "which does not belong to the citizens of the country generally by common right" '; that no one inherently possesses the right to grant a franchise, except the sovereignty within which it is proposed to be exercised, but that it is competent for such sovereignty to delegate the right to grant the franchise to some or all of its municipalities as political subdivisions of the government, or perhaps it may vest such power in such agencies of government as it sees proper."

The same thought is thus expressed in section 1748 of McQuillin's Municipal Corporations (2d Ed.):

"Primarily the legislature, representing the people at large, possesses full and paramount power over all highways, streets and alleys in the state. The power to grant franchises to use the streets resides primarily in the legislature, and it has power to grant to a public service corporation the right to use the streets without compensation to, or the consent of, the municipality, unless the state constitution otherwise provides; but it cannot authorize the holder of such franchise to interfere with the property rights of an abutter without just compensation.

"However, the constitutions of several of the states limit the legislative authority over streets by providing that no law shall be passed by the legislature granting a street railroad company [and in some states the prohibition is extended to other or all public service companies] the right to use the streets within any municipality without the consent of the local authorities, and in some states, by constitutional or statutory provision, the consent of the voters, or of abutting owners, is necessary, at least as to grant of the right to use streets for a street railway."

The granting of a franchise such as the one here in question being an exercise of sovereignty which, as an original proposition, rests with the legislative body 'of the people, the Legislature, our problem in the instant case is to determine how far the people by their Constitution have stripped from their Legislature such power and given it to local bodies, here, the municipalities. It is quite clear that the framers of the Constitution meant to vest the municipality with the right and power to control the original occupation of its public ways and streets by the utilities mentioned in this section 163 of the Constitution. A reading of the debates of the Constitutional Convention bearing upon this section 163 of the Constitution will disclose that the main and actuating purpose of the framers of that instrument was to prevent the Legislature from authorizing the indiscriminate use of the streets of the city by public utilities without the city being able to control the decision as to what streets and what public ways were to be occupied by such utilities. There is no language, however, in either section 163 or section 164 of the Constitution that takes away from the Legislature the right and power to require a municipality once it has granted a franchise to a public utility to give that utility, after it has established its plant and occupied the public ways and streets of the municipality, the opportunity on the expiration of its franchise of procuring a new one, on terms fair to the city, the utility, and to the public, by a bid which is highest and best in open competition. If a competitor in such competition is the successful bidder, then the municipality may accept or reject such bid as it sees fit for the competitor represents a new easement in the streets and as to him, it is the original occupation of the public ways, a matter left by section 163 of the Constitution to the uncontrolled discretion of the municipality. But if the holder of the expiring franchise is the successful bidder, to require the city to accept his bid does not involve the original occupation of its streets by a utility but the continued occupation of them, the consent to occupy which was once granted by the municipality in the exercise of an uncontrolled discretion. The Norris Case, supra, goes no further than to require the city to let the franchise to the highest and best bidder only in the event the old franchise holder is the highest and best bidder, as it was in that case. The framers of our Constitution were able men. They knew that, if a public utility once established could have no opportunity of

**536**

continuing its business on the expiration of its franchise, not even if it were the highest and best bidder in open competition for a new franchise, fair to the city, the utility, and to the public, it would be compelled as a sheer matter of business and finance to amortize its plant within the period of its existent franchise, which cannot exceed the period of twenty years and that to do so would necessitate such rates to the public as would make the cost of the service rendered extremely burdensome, and indeed in some instances almost prohibitive. New inventions or improvements could not be installed especially toward the end of the franchise period for there would be no real chance to amortize them. Nor would the depreciation allowance unless it amounted to an amortization, take care of the situation, and, if it did amount to an amortization, the result would be reflected in the cost of service to the public just as an amortization would. For a full discussion of this matter of depreciation in public utility accounting, see the dissenting opinion of Justice Brandeis in United Railways & Electric Co. of Baltimore v. West, 280 U. S. 234, 50 S. Ct. 123, 74 L. Ed. 390. Therefore, the framers of our Constitution put no obstacle in the way of the Legislature requiring a city once it had granted a franchise to give the franchise holder an opportunity to get a new and similar one on its expiration on the terms and under the conditions the Legislature has set out in the 1904 and 1926 acts. The conclusions which are here thus reached were also arrived at by the Circuit Court of Appeals for the Sixth Circuit in the case of City of Louisville v. Louisville Home Telephone Co., 279 F. 940, 953. In that case, the constitutionality of the 1904 act was involved, and, in sustaining the act as against such contention of unconstitutionality, the court, speaking through Judge Denison, said:

"This statute plainly made it the duty of the city, before the expiration of the company's franchise, to prepare and offer for sale a suitable new franchise, which the company could purchase if it wished, and whereby it could continue its business and the patrons continue to receive service, without the interruption caused by building a new plant. That one purpose of this statute was to protect from being arbitrarily ejected those public utilities whose franchise expired, and to do so by requiring procedure thereunder for the benefit of the company as

well as for the benefit of the city, seems to us obvious upon its face. * * * In attacking the position of advantage thus claimed by the company, the city first says that section 3037d is unconstitutional and invalid, because section 163 of the Constitution provides, in effect, that no public service company shall use the streets without the consent of the council, and it is therefore argued that no legislative act can compel the consent of the council to the extent inherent in the carrying out of section 3037d. Specifically it is said that if, when the Home Company franchise expired the council was satisfied with the service being given by a competing company, it had the constitutional right, under section 163, to refuse consent to the longer occupation of the streets by more than one company.

"It may be conceded, for the argument, that the Legislature would have no power to compel the council to permit a new and additional use of the streets, and to do so by requiring a new and second franchise to be sold when there was one in existence and satisfactory operation. Such concession does not reach this case. To compel the city to permit burdening the streets with a new easement is one thing, but it is quite another thing merely to require that the council, when it has once consented to such burden, shall be reasonable, and not arbitrary, in its treatment of the property which has been dedicated to public use under that consent, and shall not insist that such property be practically destroyed while it still desires public service of that character, and while the company continues willing to render it upon reasonable conditions. We do not doubt that the protection of invested property, to that extent, continued to be within the reasonable discretion of the Legislature, without impairment by section 163."

To summarize, the act of 1926 does not compel the granting of the franchise mentioned in the act to the old franchise holder except in the event such franchise holder is the highest and best bidder at the sale. If it is, section 163 of the Constitution does not stand in the way of the Legislature requiring the city to accept such bid. On the other hand, if the old franchise holder is not the highest and best bidder, then the city is not compelled to let the franchise to the outsider because of the

express provisions of section 163 of the Constitution. It is argued, however, that the conclusion thus arrived at with reference to the interpretation put on section 163 of the Constitution is in plain conflict with the provisions of section 164 of that instrument. It is contended that to require the city on the expiration of a franchise to let a new one to the old franchise holder is in effect to require the city once it has granted a franchise to renew it from time to time and so in reality in perpetuity whereas this section provides that no franchise shall be granted for a period longer than twenty years; and further that to put the duty on the city to offer a new franchise as the statute requires, takes away from the city the protection as to the sale of franchises which this section was meant to insure. Neither the 1904 nor the 1926 act works a perpetuity of a franchise once granted. Neither act requires the old franchise to be relet. It is a new franchise which is called into being. The city may prescribe a character of service, rates, etc., in the new franchise as it deems proper, the only restriction being that the new franchise must be fair to the city, public, and the utility, which simply means that the city shall not be arbitrary, and, as to this, the city cannot complain. Nor does the prohibition against arbitrary action of itself work a perpetuity. The statutes do not require the granting of a new franchise to the old franchise holder unless it be the highest and best bidder at the sale. A reading of the Constitutional Debates reveal that the main purpose behind this section 164 was to insure that every so often the municipality should have the opportunity of revising the terms of the franchise which it had granted as to rates, quality, service, and the like, and to have the advantage of obtaining from time to time for the franchise its value which most likely would be enhanced by the growth of population and business. Thus in the case of Hilliard v. George G. Fetter Lighting & Heating Co., 127 Ky. 95, 105 S. W. 115, 118, 31 Ky. Law Rep. 1330, Judge Carroll, himself a member of the Constitutional Convention of 1890, speaking for the court on this point, said:

"Further illustrating the intention of the section, the limitation of 20 years upon the time for which franchises might be granted was added, as what would be an adequate price for a franchise granted to a public utility corporation to use the streets of a city to-day might be a mere pittance 20

years hence. The value to the owners of the right granted would keep pace with the growth, wealth, and population of the city, and unless at some future time the city had the right to obtain additional compensation for the privilege it would give the grantees of the franchise undue advantage, and deny to the city the right to exact a consideration in keeping with the value of the privilege bestowed.''

We therefore conclude that the acts of 1904 and 1926 violate neither section 163 nor section 164 of the Constitution.

It is next urged that the 1926 act violates section 19 of the state Constitution and section 10 of article 1 of the Constitution of the United States, which sections forbid the impairment of the obligation of contract. There is nothing in the act which remotely affects or impairs the obligation of the old franchise contract. The act simply requires the city to offer a new franchise on the terms set out in the statute. The old franchise holder may not even be the successful bidder at the new sale. The duty of the city to offer for sale the new franchise does not arise because of any new obligation injected into the old franchise by the 1926 act. It arises solely because of the exercise by the Legislature of a dormant power it always had the right to exercise when a certain status was presented. The city, having once granted the franchise, was always subject to the imposition of the duty here enjoined upon it by the act of 1926 whenever the Legislature chose to exercise its right to require the city so to do.

Nor does the act violate section 181 of the Constitution forbidding the imposition of taxes by the Legislature for municipal purposes. Appellees argue that the city will be put to some cost in the preparation, advertisement, and sale of the new franchise, and, since such franchise is purely local in its character, the Legislature may not require the city to levy a tax to take care of such expense. The fallacy in the argument is the assumption that the franchise is purely local. On the contrary, as we have seen, the franchise inheres in the sovereignty of the state, and that save to the extent it has been delegated by the Constitution or statutes to some local subdivision, it is subject to the control of the Legislature. We have seen that the Legislature has not been deprived of its power to require a new franchise to

be offered under facts and circumstances like those here present, which, being true, it may require the city to bear the expenses of preparing and advertising the franchise and conducting the sale without violating section 181 of the Constitution. The point is settled in the cases of Hendrickson v. Taylor County Farm Bureau, 196 Ky. 75, 244 S. W. 82; Furlong v. Darnaby, 206 Ky. 63, 257 S. W. 707; State Budget Commission v. Adams, 249 Ky. 680, 61 S. W. (2d) 314.

Its title being fairly indicative of its contents, the act of 1926 does not violate section 51 of the Constitution. We therefore conclude that the act of 1926 is not unconstitutional.

(b) As to the construction to be put upon the act, appellees claim that under the provisions of section 2741m-1, and reading:

> "Provided: that if there is no public necessity for the kind of public utility in question and if the municipality shall desire to discontinue entirely the kind of service in question, then this section shall not apply."

—they are not required to offer for sale the requested franchise. It is their argument that the expressions "kind of public utility" and "kind of service" not only refer to distinctions between the various kinds of utilities specifically mentioned in section 163 of the Constitution, but also to the distinction between municipally and privately owned plants. We are clearly of the opinion that the expressions "kind of public utility" and "kind of service" in the 1926 act refer to the various kinds of utilities mentioned in section 163 of the Constitution, and have no reference to the distinctions between publicly owned and privately owned utilites. Such a construction of the language used is fair, reasonable, and logical and the one which naturally occurs to one on reading the statute. The interpretation urged by the appellees is a strained one, and one which would not naturally occur to the reader. Whether the service of the utilities mentioned in section 163 of the Constitution is to be furnished by a private corporation or by a municipality is a matter of expediency, convenience, or policy. The decision of such question does not turn on "public necessity." But whether the community shall have gas, water, or electric service is a question of the necessities of the public under the facts and circumstances of the

particular case. If the Legislature had intended that the act here in question should not apply in the event the municipality should desire to own and operate a municipal plant, it could have so provided in very simple language something to this effect:

"If the municipality shall desire to own and operate a municipal plant, this section shall not apply."

To reach such a result, there is no necessity for using the language of the proviso as it appears in the 1926 act. Indeed, where the Legislature had in mind the elimination of a privately owned plant by a municipal plant, it made express provision for such elimination as may be seen from reading the 1904 act, and especially section 2, thereof, which is now section 3037d-2 of the Statutes. We therefore conclude that the fact that the city of Paris desired to enter the same field of service as that of the appellant did not render the 1926 act inapplicable.

(c) As to the contention that the appellant has been guilty of laches, and is now estopped to assert its alleged rights in this action, the main contention of the appellees is that, after this suit had been filed, the appellant did not prosecute it with diligence, and that, since the suit was filed, the appellees have expended large sums of public money in the acquisition of a municipal electric light plant, the plans for which had been begun prior to the institution of this action. The city does not deny that it was well aware of the position of the appellant both before and after the expiration of its franchise in 1929, and that the appellant was insistent that a new franchise be offered for sale, and that, after all hopes of an amicable settlement had been dissipated, this suit was filed. Once this suit was filed, the appellees had as much opportunity to press it to a conclusion before expending the sums it did on the municipal plant as the appellant had. There is nothing from which appellees could justly infer that the appellant ever abandoned its position as to its right to have a new franchise offered for sale. Being fully aware of the position of the appellant, appellees can hardly be said to have relied upon the appellant's abandonment of the right it was claiming. On the contrary, it is clear that the appellees relied upon their own position that in law they were not compelled to act as appellant insisted. They acted not because they thought the appellant had yielded in the

542

contest, but because they were confident that they were right and would prevail in any effort to compel them to let a franchise. What we have said being true, it follows that the plea of laches and estoppel will not avail the appellees in this case.

The judgment of the lower court not being in accord with these views, it is reversed. In accordance with the request of the parties on both sides that this litigation be finally disposed of by this opinion, it is ordered that on the return of the case to the lower court it enter judgment in accordance with the prayer of the petition of the appellant.

Whole court sitting.