**PUBLIC SERVICE COMMISSION of Kentucky et al., Appellants,**

v.

**The CITY OF PARIS, Kentucky, a Municipal Corporation of the Fourth Class, et al., Appellees.**

**F. M. VANMETER, Kentucky Utilities Company, et al., Plaintiffs,**

v.

**Louis ELVOVE, Board of Commissioners of Paris, et al., Defendants.**

Court of Appeals of Kentucky.

March 8, 1957.

Squire R. Ogden, Charles A. Robertson, Ogden, Galphin & Abell, Louisville, Bradley & Blanton, Paris, for Kentucky Utilities Co.

Jo M. Ferguson, Atty. Gen., J. Gardner Ashcraft, Asst. Atty. Gen., for Public Service Com.

David D. Cline, Samuel Milner, Paris, for City of Paris.

MOREMEN, Judge.

The litigation between the parties to this appeal has been long and involved. For opinions in prior appeals, see: Kentucky Utilities Co. v. City of Paris, 248 Ky. 252, 58 S.W.2d 361; Kentucky Utilities Co. v. Board of Com'rs of City of Paris, 254 Ky. 527, 71 S.W.2d 1024; Kentucky Utilities Co. v. City of Paris, 256 Ky. 226, 75 S.W.2d 1082; City of Paris v. Kentucky Utilities Co., 280 Ky. 492, 133 S.W.2d 559; Kentucky Utilities Co. v. City of Paris, 297 Ky. 440, 179 S.W.2d 676; Vanmeter v. City of Paris, Ky., 257 S.W.2d 909; Ky., 273 S.W. 2d 49.

Some of the litigation has resulted from a difference of opinion between elected officials of the city of Paris and the resident voters of that municipality. The voters, under KRS 89.250, have on several occasions overridden the will of the board of commissioners who constitute a governing body of the city.

This statute, which perhaps resulted from the principle announced in § 4 of our Constitution to the effect that "all power is inherent in the people," provides that if a petition, signed by a sufficient number of voters, requests the board of commissioners to pass a certain ordinance and, if the ordinance requested to be passed is one that the board has a legal right to pass, the board shall then either pass the proposed ordinance without alteration within ten days after the petition is filed, or submit the question of its passage to the voters of the city at the next regular election.

The city of Paris (herein called "city") owns and operates a plant which supplies electric energy to consumers within and near its corporate limits. In 1944, the city sold to Kentucky Utilities Company (herein called "company") a franchise under which it too was authorized to furnish electricity to consumers in and about the city. In July 1952, about two years before this franchise expired by its terms, an initiative petition containing the required number of signatures was presented to the board of commissioners (herein called "board") requesting that an ordinance be passed providing for the sale of a new electric franchise. This early action was necessary because KRS 96.010 requires that at least eighteen months before the expiration of a franchise, the legislative body of each city shall provide for the sale of a new franchise.

The board took no action on the petition. The interested parties sought a declaration of rights and a mandatory injunction compelling the board so to do. On appeal, Vanmeter v. City of Paris, Ky., 257 S.W.2d 909, we held that failure of the board to act did not nullify the initiative proceeding and the case was remanded on procedural grounds.

On return to the circuit court, the appellants, who consisted of the company and three voters and taxpayers of Paris, were unsuccessful in obtaining a sale of the franchise.

On return to this court, Vanmeter v. City of Paris, Ky., 273 S.W.2d 49, the court discussed the general law applicable to initiative and referendum statutes and directed that judgment be entered requiring the board to submit the proposed franchise ordinance at some general election to the vote of the people, under KRS 89.250. At a regular election held November 8, 1955, the proposal received an affirmative vote and, under the terms of the ordinance, the city clerk was charged with the duty of offering the franchise for public sale. .

Under subsection (3) of KRS 278.020, no utility is permitted to obtain a franchise until it has secured from the Public Service Commission (herein called "commission") a certificate of convenience and necessity showing that there is a demand and need for the service sought to be rendered. The company filed such an application which was assigned a day for hearing.

The city resisted the granting of the application at a hearing before the commission in February 1956. The vice-president in charge of operations of the company, who was familiar with the distribution system in Paris, testified to the extent of the company's operation in Paris over the years. He filed a detailed map which showed with sufficient clarity the distribution and transmission lines used by the company, together with other information such as the location of the transformers. By lines of a different color were shown the distribution conduits owned by the city of Paris. This map disclosed that both the company and the city had set up distribution systems that covered most of

the inhabited area within the city limits. It was shown that on January 31, 1956, the company served a total of 878 customers within the city limits and 207 who lived outside the city limits, but nevertheless were classed as urban customers. In addition, were served about 800 customers who lived outside the city and who were classified as rural customers.

The company had distribution lines on approximately seventy-eight per cent of the total mileage of the city streets. It was revealed that the city plant was also serving many customers in the same general area and that, in some instances, joint poles were used to carry the supply lines.

The city offered proof to the effect that it would be able adequately to supply all the customers. The commission, however, rejected such evidence and was apparently of the opinion that the long service by the utility company to a substantial portion of the customers in Paris was conclusive proof of the need for such service and a certificate was granted to the appellant company.

The city thereupon filed suit in the Franklin Circuit Court which resulted in a judgment from which this appeal is prosecuted. The suit sought to have set aside the order of the commission. Many grounds were assigned as error, among them being that the city's electric plant was adequate; that the granting of a certificate would result in unnecessary duplication of facilities and undesirable competition; that the city had issued bonds in connection with its plant and the granting of the certificate would jeopardize the earnings and result in increased taxation; and finally, that evidence offered by the city before the commission was improperly excluded.

Soon afterwards, the company with other individual plaintiffs, filed suit in the Bourbon Circuit Court and sought an injunction directing the city to offer for sale the franchise created under the initiative ordinance and to restrain the city from taking further steps to prevent the commission from granting a certificate of convenience and necessity.

The Bourbon Circuit Court and the Franklin Circuit Court are presided over by the same judge and the two actions were heard together. On November 6, 1956, the Franklin Circuit Court entered this order:

"It appearing to the Court that the Public Service Commission of Kentucky was in error in its failure to find, as a matter of fact, from substantial and unbiased evidence, that there is a need, because of convenience and necessity, for competition by Kentucky Utilities Company with the Electric Light Plant owned and operated by the people of Paris, it is now ordered that this action be, and is, remanded to the Public Service Commission of Kentucky for a finding of fact on the question of convenience and necessity as set out in this Order."

While the foregoing direction does not contain the classical language usually employed in judgments, its effect is to decide the issue between the parties and we accept it as being appealable.

When we examine the final order we find that the court does not hold that the commission was without a basis in fact for its finding that a need for service existed and that a certificate should issue. The judgment seems to be predicated upon the theory that before a certificate may issue to the company, it must be established that the city-owned utility needs competition. The effect of the acceptance of such a thesis is to give to the city a perpetual monopoly unless it is shown that its service has been such that the people may only be served by an additional utility.

The law of this court has never favored monopolies or the granting of exclusive privileges of any kind. § 3 of the Constitution provides:

"Every grant of a franchise, privilege or exemption, shall remain subject to revocation, alteration or amendment."

■ The Supreme Court of the United States has pointed out that a utility has no constitutional or inherent right to be protected against competition and, in Tennessee Electric Power Company v. Tennessee Valley Authority, 306 U.S. 118, 59 S.Ct. 366, 370, 83 L.Ed. 543, said:

"The franchise to exist as a corporation, and to function as a public utility, in the absence of a specific charter contract on the subject, creates no right to be free of competition, and affords the corporation no legal cause of complaint by reason of the state's subsequently authorizing another to enter and operate in the same field. The local franchises, while having elements of property, confer no contractual or property right to be free of competition either from individuals, other public utility corporations, or the state or municipality granting the franchise. The grantor may preclude itself by contract from initiating or permitting such competition, but no such contractual obligation is here asserted."

We therefore reject the idea inherent in the final order, above quoted, that a publicly-owned utility has any advantages, not specifically set forth in the statutes, over any other utility. To the contrary, in Public Service Commission v. Cities of Southgate, Ky., 268 S.W.2d 19, 21, it was said:

"It is our opinion that the power of the Public Service Commission to determine whether a proposed purchaser of a utility system is ready, willing and able to provide adequate service is necessarily implied from the statutes. However, the appellee cities would have us extend the implication so as to include the power in the commission to determine whether public ownership is more beneficial than private ownership, and to determine under whose ownership the lowest rates may be achieved. The latter two questions address themselves to basic public policy, upon which we feel an express legislative declaration is required."

■ We do not intend to imply that the question of competition should never be considered by the commission. We are concerned only with the law applicable to the facts of this case and, in this case, there has been an express legislative declaration as to the basic public policy, not by the general assembly, but by the legislative body of the city most vitally interested. Competition has been created and approved by the legislative action of the city by its original action in 1944 in providing for sale of a new franchise by which a privately owned utility might operate in direct competition with the city's electric system and by its legislative action which began in 1952 to offer again a franchise to private utilities.

The fact that the city's ordinances, which created the franchise and the competition, resulted from referenda lends dignity rather than detracts from its legislative character. This court has approved the submission of these same ordinances to the voters and necessarily has approved the competition which would result. Vanmeter v. City of Paris, Ky., 273 S.W.2d 49; and Vanmeter v. City of Paris, Ky., 257 S.W.2d 909. Therefore, it seems to us that the Franklin Circuit Court remanded the case to the commission for determination of one question which had been eliminated by the legislative action of the board of commissioners and by prior decisions of this court.

■■ With the question of competition eliminated, we believe it our duty to examine the character of the testimony heard by the commission and decide whether it was correct in issuing a certificate. Subsection (3) of KRS 278.020, under which this application was made, reads:

"No utility shall apply for or obtain any franchise, license or permit from

any city or other governmental agency until it has obtained from the commission, in the manner provided in subsection (1) of this section, a certificate of convenience and necessity showing that there is a demand and need for the service sought to be rendered."

This provision is not too specific and it sets up no standards to guide the commission with the one exception "that there is a demand and need for the service sought to be rendered."

Apparently the demand and need for service is to be gauged from the point of view of the consumers and narrows almost to the determination of whether there are any customers in the area.

The proof introduced before the commission shows that over a thousand customers, for a period of at least ten years, have needed the service offered by the company and the only question which the commission had to decide was: Would these customers continue to need and demand electrical service? The answer is obvious. In this connection, appellees have argued that the city's plant was adequate and sufficient to supply all the customers of the city but, as pointed out above, no organization has the constitutional or inherent right to be protected against competition.

In Public Service Commission v. Blue Grass Natural Gas Co., 303 Ky. 310, 197 S.W.2d 765, 768, the court defined the commission's duty as follows:

"By the terms of the statute its authority is limited to the determination of whether there is a need and demand for the public service in question, and if it determines that there is such need and demand it must issue a certificate to all parties seeking a right to bid upon the franchises to be offered by political subdivisions."

We have no hesitancy in holding that the need for continued electrical service to the customers who are and have been served by the company was amply shown. Under the circumstances of this case, we see no reason why a municipally owned corporation should have any priority over one owned privately and believe that the commission correctly issued a certificate of convenience and necessity.

The judgment of the Franklin Circuit Court is reversed and remanded with directions that the complaint be dismissed.

■ In connection with the motion for a temporary injunction before this court, we are confronted with difficulty. It is argued by appellants, under subsection (1) of C.R. 65.11, if the circuit court refuses to grant a temporary injunction, the party adversely affected may within twenty days apply to this court for an order directing the circuit court to issue such a temporary injunction. The trouble we have lies in the fact that nothing is of record showing that the temporary injunction was denied.

We are assured by the briefs that several motions were made but the record is plain that the court entered an order by which he took time and held the case under submission. Perhaps the court felt as we do that a determination of the matter of appeal from the Franklin Circuit Court would settle the questions raised by the motion for an injunction. This court has indicated on several occasions that a franchise should be offered for sale under the ordinance. We believe that with the final adjudication, as evidenced by this opinion, the way is open for compliance with our previous ruling.

The motion for a temporary injunction in this court is therefore overruled without prejudice.

The judgment of the Franklin Circuit Court is reversed.