OPINION OF THE COURT BY
JUSTICE KELLER
Lori Hudson Flanery, in her official capacity as Secretary of the Finance and Administration Cabinet for the Commonwealth of Kentucky; Thomas B. Miller, in his official capacity as Commissioner of the Department of Revenue for the Commonwealth of Kentucky (Cabinet); and Kentucky CATV Association, Inc. (KYCATV) appeal the decision of the Court of Appeals reversing the Franklin Circuit Court’s judgment in their favor and remanding with instructions to grant judgment in favor of the City of Florence', Kentucky; City of Winchester, Kentucky; City of Greens-burg, Kentucky; City of Mayfield, Kentucky; and Kentucky League of Cities, Inc. (Cities). This Court granted discretionary review, and for the reasons stated herein, we affirm the opinion of the Court of Appeals, vacate the Franklin Circuit Court’s judgment, and remand for entry of summary judgment in favor of the Cities.
I. BACKGROUND.
In 2006, the General Assembly enacted the Multichannel Video Programming and Communications Services Tax (the Tele-com Tax). Kentucky Revised Statute (KRS) 136.600 et seq. While the Telecom Tax as a whole changes the way the Commonwealth taxes video telecommunications and programming providers, the subject of this litigation is one provision prohibiting “every political subdivision of the state” from collecting franchise fees or taxes on franchises subject to the Telecom Tax. KRS 136.660(l)(a)-(c) (Prohibition Provision). The Telecom Tax authority encompasses each of the Commonwealth’s political subdivisions; however, we note that only the Cities are parties to this litigation.
*358 The Telecom Tax assesses a tax on the gross revenues received by all multichannel video programming (MVP) and communications service providers, and is composed of excise taxes, sales taxes, and other similar taxes on the property of MVP service providers. MVP service is programming provided by a television broadcast station or similar entity and includes cable television services, satellite broadcast and wireless cable services, and internet protocol television.
The Telecom Tax imposes a 3% excise tax on all retail purchase of MVP services, as well as a 2.4% tax on the gross revenues received by all providers of MVP services, and a 1.3% tax on the gross revenues received by providers of communications services. . KRS 136.604 and KRS 136.616. These provisions effectively impose a 5.4% tax on total charges for MVP services and a 4.3% tax on total charges for telecommunications services. Revenue collected under the Telecom Tax is then deposited into the General Fund.
Section 163 of the Kentucky Constitution provides that no utilities shall be permitted within a city or town without the consent of their legislative bodies. Section 164 of the Kentucky Constitution authorizes counties, cities, towns, taxing districts, and other municipalities to grant franchises, subject to a twenty-year limitation thereon. Historically, municipalities collected franchise fees as compensation for granting utilities use of municipal rights-of-way, pursuant to Sections 163 and 164. Cable companies were required to obtain the local government’s permission to use roads and rights-of-way, and the municipalities granted them permission via permits, to which franchise fees applied.
As noted above, the Telecom Tax’s Prohibition Provision prohibits local governments from levying or collecting franchise fees or taxes from MVP and communications providers. KRS 136.660(l)(a)-(c). To compensate local governments for this loss of revenue, the statute mandates that a portion of the funds generated by the Tele-com Tax be disbursed to the municipalities as “monthly hold-harmless amounts,” which are capped at a total of $36,408,000.00 annually. KRS 136.650(2)(c). The parties do not dispute that this amounts to only 83% of the $42,100,000.00 annually collected by the municipalities prior to the Telecom Tax.
In 2011, the Cities filed a petition for declaratory relief, alleging that the Tele-com Tax violates their right to grant franchises and to collect franchise fees as provided in Sections 163 and 164 of the Kentucky Constitution. The Cabinet and KYCATV denied the Cities’ allegations and all parties filed motions for judgment on the pleadings. The circuit court granted the Cabinet’s and KYCATV’s motions and dismissed the petition, holding that the Telecom Tax does not violate Sections 163 and 164.[1] The Court of Appeals then vacated the circuit court’s judgment and remanded, finding that the Telecom Tax’s Prohibition Provision violates Sections 163 and 164, entitling the Cities to summary judgment.[2] We set forth additional facts as necessary below.
*359 II. STANDARD OF REVIEW.
This case concerns a matter of constitutional construction or interpretation, which we review de novo. Greene v. Commonwealth, 349 S.W.3d 892, 898 (Ky. 2011). In conducting that review, we must construe the constitutional provisions at issue in a manner that carries out the intent of the framers because “[t]he polestar in the construction of Constitutions is the intention of the makers and adopters.” Grantz v. Grauman, 302 S.W.2d 364, 367 (Ky. 1967). We gather that intent “both from the letter and the spirit of the document.” Id. The dissent states that the majority, by looking to the framers’ intent, “dangerously teeter[s] on injecting our own policy preferences into the ease before us—a task most aptly reserved for the legislative branch.” However, we are “simply doing what we are charged to do.” Jefferson Cnty. Bd. of Educ. v. Fell, 391 S.W.3d 713, 727 (Ky. 2012). As this Court stated in Fell:
Where the statute is ambiguous, the Court may properly resort to legislative history. [MPM Financial Group, Inc. v. Morton, 289 S.W.3d 193, 198 (Ky. 2009)]; Fiscal Court of Jefferson Co. v. City of Louisville, 559 S.W.2d 478, 480 (Ky. 1977) (“The report of legislative committees may give some clue. Prior drafts of the statute may show where meaning was intentionally changed. Bills presented but not passed may have some bearing. Words spoken in debate may be looked at to determine the intent of the legislature”). Often legislative history is referenced, even where a statute is unambiguous, simply to underscore the correctness of a particular construction. See Stephenson v. Woodward, 182 S.W.3d 162, 172 (Ky. 2005) (Resort to legislative history is unnecessary when the statute is “abundantly clear,” but in case at bar “legislative history is enlightening and serves only to strengthen our foregoing conclusion”).
Id. at 719-20.
III. ANALYSIS.
In asserting that the Telecom Tax’s Prohibition Provision does not violate the Kentucky Constitution, Appellants make two main arguments: 1) Sections 163 and 164 neither explicitly nor implicitly provide municipalities the power to collect franchise fees; and 2) Section 181 grants the General Assembly the power to prohibit municipalities from collecting franchise fees.[3] We address each argument below.
A. Kentucky Constitution Sections 163 and 164.
Section 163 of the Kentucky Constitution provides:
No street railway, gas, water, steam heating, telephone, or electric light company, within a city or town, shall be permitted or authorized to construct its tracks, lay its pipes or mains, or erect its poles, posts or other apparatus along, over, under or across the streets, alleys or public grounds of a city or town, without the consent of the proper legislative bodies or boards of such city or town being first obtained; but when charters have been heretofore granted conferring such rights, and work has in good faith been begun thereunder, the provisions of this section shall not apply.
*360 Section 164 of the Kentucky Constitution provides:
No county, city, town, taxing district or other municipality shall be authorized or permitted to grant any franchise or privilege, or make any contract in reference thereto, for a term exceeding twenty years. Before granting such franchise or privilege for a term of years, such municipality shall first, after due advertisement, receive bids therefor publicly, and award the same to the highest and best bidder; but it shall have the right to reject any or all bids. This section shall not apply to a trunk railway.
The Appellants argue that neither section discusses a municipality’s right to collect franchise fees and, as such, the Court of Appeals erred in implying that such a right exists. Rather, the Appellants contend that Section 163 only vests in municipalities the ability to control the original occupation of its public streets and rights-of-way and, similarly, Section 164 only vests in municipalities the ability to grant franchises to the highest and best bidder. The Court, having reviewed the Proceedings and Debates in the Constitutional Convention of 1890 (Debates), finds it abundantly clear that the framers of our Constitution intended that municipalities shall have both the power to grant franchises as well as the power to collect fees in exchange for granting those franchises.
Evident within the Debates concerning Sections 163 and 164[4] is the framers’ desire to protect the citizens of a municipality from a city council infiltrated by business interests and whose objective is to profit, at the expense of the public, through perpetual monopolies and backroom dealings. This is precisely the notion that our predecessor Court captured in Stites v. Norton over one hundred years ago. 125 Ky. 672, 101 S.W. 1189 (1907). “The evident purpose of [Section 164] was to prevent councils of cities from giving away or selling at an inadequate price the rights and privileges belonging to the citizens, and compel the disposition of such valuable rights to be made publicly, to the end that the citizen might obtain the greatest price possible.” Id. at 1190.
However, the framers’ concern was not solely limited to those who would infiltrate the municipalities’ city councils, it was also directed toward those who would infiltrate the General Assembly and, thereby, take from the citizens of municipalities not only control over their franchises but also the financial benefit such franchises would produce. See Debates, 2845. This proposition was evidenced by Mr. Young, Constitutional Convention Delegate from Louisville:
If corporations are to be intrusted [sic] with such privileges [to operate a franchise], the local government ought to be alone intrusted [sic] with the right of determining where and how the streets or alleys of any city shall be used for any such purpose. I know in the city of Louisville it would have been of great importance to us if the Legislature had not been permitted to take this question up, and allow street-car lines through our city without the consent of the local government.

Id.

This dual intention is further illustrated by Mr. Bronston, Constitutional Convention Delegate from Henderson, while speaking about Section 163 and asserting that the cities should have full control of the placement of telephone, electric light, and gas companies: “I cannot see how any gentleman on the floor could insist yvith *361 sincerity and earnestness, that the city should not have control of its streets and alleys, which streets and alleys are constructed by taxation for the benefit of the city, and under its exclusive control.” Id. at 2849. As Mr. Bronston stated, the guiding themes behind the enactment of Sections 163 and 164 were: 1) municipal control; and 2) municipal benefit via the sale of franchises. Id. Our predecessor Court echoed this notion in Kentucky Utilities Company v. Board of Commissioners of City of Paris:
[T]he main purpose behind this section 164 was to insure that every so often the municipality should have the opportunity of revising the terms of the franchise which it had granted as to rates, quality, service, and the like, and to have the advantage of obtaining from time to time for the franchise its value which most likely would be enhanced by the growth of population and business.
254 Ky. 527, 71 S.W.2d 1024, 1028 (1933) (emphasis added).
A reading of the Debates makes clear that the municipality’s twenty-year limitation in creating franchises emerged from the framers’ dual concerns of control and public benefit. Ky. Const. § 164. Mr. Mackoy, Constitutional Convention Delegate from Covington, stated: “This method [of providing a set-year limitation] determines the actual value of the franchise, which ought to go to the public, to whom alone it is due, and still leaves profit on capital actually invested to the [franchise].” Debates, 2950.
Continuing in this vein, Mr. Young adamantly stated that the municipalities should receive the full return of their franchises: “The object of [Section 164] is, that if there is a valuable franchise or privilege given, that the public shall get the benefit of it and that the profit from it shall go into the public treasury, and not into the pockets of individuals.” Id. at 2952. When asked if the provision requiring the sale of franchises after twenty years would be more appropriate in a city ordinance than in the Constitution, Mr. Young’s response was dispositive on the issue: “[I]n the Constitution, where, to be valid, the franchise has to be put up and sold, we are sure to get the money in the city treasury, where it ought to go.” Id. (emphasis added).
The dissent states that “the clarity of the constitutional delegation ceases at the moment a locality awards a franchise” and “[t]he ability to assess recurrent franchise fees is not necessary to a city’s ability to grant a franchise and it is certainly not indispensable.” These statements ignore that portion of Section 164 that requires a city to “receive bids .., publicly, and award the [franchise] to the highest and best bidder.” If a city cannot charge a fee for a franchise, there is no purpose for “receiving bids,” By granting cities the ability to enter into a franchise agreement, the Constitution afforded them the benefit of the full range of contract law. Inherent in contract law is the ability to contract for and receive consideration in exchange for performance of the contract, i.e., granting the franchise. Thus, the assessment of a franchise fee is an indispensable part of granting a franchise. Furthermore, there is nothing in either Section 163 or 164 that requires the successful bidder to pay the franchise fee in a lump sum, or to prevent a city from collecting that fee over the life of the franchise.
While “the franchise inheres in the sovereignty of the state,” it is only subject to the control of the General Assembly “save to the extent it has been delegated by the Constitution....” Kentucky Utils. Co., 71 S.W.2d at 1029. It is clear that the framers of our Constitution intended to delegate to municipalities: control over the placement of utilities within their public *362 spaces and rights-of-way; and the right to reap the long-term profits of that control through consideration paid by private franchisees to the municipality, i.e., franchise fees. The portion of the Telecom Tax prohibiting municipalities from levying franchise fees on MVP services, including fees intended as compensation for the use of the municipalities’ rights-of-way, is contrary to Sections 163 and 164 of the Kentucky Constitution and is, thus, void as unconstitutional.
B. Kentucky Constitution Section 181.
KYCATV argues that the historical power of the municipalities to collect franchise fees was a delegation of the General Assembly’s authority granted in Section 181 of the Kentucky Constitution. Section 181 provides:
The General Assembly shall not impose taxes for the purposes of any county, city, town or other municipal corporation, but may, by general laws, confer on the proper authorities thereof, respectively, the power to assess and collect such taxes. The General Assembly may, by general laws only, provide for the payment of license fees on franchises, stock used for breeding purposes, the various trades, occupations and professions, or a special or excise tax; and may, by general laws, delegate the power to counties, towns, cities and other municipal corporations, to impose and collect license fees on stock used for breeding purposes, on franchises, trades, occupations and professions. And the General Assembly may, by general laws only, authorize cities or towns of any class to provide for taxation for municipal purposes on personal property, tangible and intangible, based on income, licenses or franchises, in lieu of an ad valorem tax thereon: Provided, Cities of the first class shall not be authorized to omit the imposition of an ad valorem tax on such property of any steam railroad, street railway, ferry, bridge, gas, water, heating, telephone, telegraph, electric light or electric power company.
KYCATV contends that, through enacting the Telecom Tax, the General Assembly “simply withdrew” its delegation of authority to municipalities to impose and collect “state-determined license fees on franchises.” However, this contention paints too broad a stroke over the power to impose franchise fees in that it does not delineate between the power municipalities are granted in Sections 163 and 164, and what powers the municipalities may have delegated to them in Section 181.
During the Debates, the framers discussed Section 181[5] extensively. The framers were cognizant of the fact that Section 164 provides municipalities with the authority to receive consideration in the form of franchise fees on their franchises in exchange for the use of their rights-of-way, while Section 181 provides the General Assembly with the power to collect license fees on franchises in exchange for the privilege of doing business within the Commonwealth.
The framers provided in Section 181 that municipalities shall have the power to collect a license fee on a franchise for the privilege of doing business within their boundaries, subject to the delegation of the General Assembly, Debates, 2689. This created the possibility of dual taxation, which concerned some of the delegates, who worried that the taxation would become overly burdensome to franchise operators. As a result, the framers initially included the language “and no double tax *363 shall be imposed” within what would become Section 181. Id.
Opponents of the “no double tax” provision were specifically concerned that prohibiting such a double tax would leave the General Assembly unable to collect taxes on'the subject matter found in Section 181, including franchises, due to the General Assembly also collecting ad valorem tax on all property within the Commonwealth. Id. Mr. Mackoy, Constitutional Convention Delegate from Covington, first voiced this concern: “In a case from Paducah to the Court of Appeals, it was held that no ad valorem tax could be imposed on the same property. That that would be double taxation; and it seems to me, while we have always authorized municipalities to collect these license fees, that care should be taken not to make the tax a double one.... ” Id. Mr. Bronston, Constitutional Convention Delegate from Henderson, then replied, “This might, in one sense, result in double taxation; but it is in conformity with the system which Kentucky has had for one hundred years. There are a good many classes of property subjected to double taxation, because they are taxed ad valorem, and then by license.” Id.
One framer was able to summarize the Committee’s position before the “no double taxation” issue was ultimately resolved. Mr. Nunn, Constitutional Convention Delegate from Crittenden, stated:
If the Convention will turn to [Section 174], you will see that all property in this State shall be assessed according to its value [i.e., ad valorem tax]. That is one assessment. The first part of this [Section 181] authorizes the Legislature to allow the State to put a tax upon the different trades, professions and occupations in the State. The latter portion authorizes municipalities to impose a tax. Now, I will illustrate it by taking the case of a saloon in this city. Under [Section 174] that saloon would pay an ad valorem tax on the value of its property. Under the first part of this section it would pay a license fee to the State, and, under the latter part, it would pay a license fee to the city. Thus we have a treble tax. Now the latter part of this section says that no double tax shall be imposed. I would take that to imply that all three of these powers could not be exercised under this section with this limitation added to it; and for that reason, I think, it should be stricken out, and let the Legislature impose all these taxes upon the different trades or occupations in the state, if it is necessary.
Id. at 2694. The Committee then voted to accept the section with the “no double taxation” provision stricken from the final . version of Section 181.
It is evident from the Debates that the founders did not intend for Section 181 to include franchise fees paid by private franchisees as consideration for the use of a municipality’s rights-of-way. This is made evident by the fact that the founders delineated between a franchise fee and a license fee on franchises in Section 164 and Section 181, respectively.
The General Assembly may delegate to municipalities the authority to collect license fees on franchises, and it may withdraw that delegation, because the municipalities’ power to collect license fees on franchises is derived solely from the General Assembly’s delegation. However, the municipalities’ power to collect franchise fees under Section 164 has been delegated by the Constitution—not by the General Assembly. To be certain, the founders enacted both Sections 164 and 181 with the knowledge that the former provided a constitutionally-granted power to the municipalities, while the latter provided a power to the General Assembly, which could be delegated to the municipalities.
*364 The General Assembly cannot withdraw that which it did not and cannot delegate. Accordingly, we hold that the General Assembly did not have the power under Section 181 of the Kentucky Constitution to prohibit municipalities from collecting franchise fees in exchange for use of their rights-of-way, as that power was constitutionally granted in Sections 163 and 164.
C. Severance of the Telecom Tax’s Prohibition Provision.
In 1996, the federal government enacted legislation that prohibited local governments from collecting taxes on satellite providers of MVP. As a result, satellite providers of such programming were exempt from local franchise fees, while non-satellite providers of such programming remained liable for those fees. To alleviate this perceived inequity, the General Assembly enacted the Telecom Tax, imposing an “excise tax ... on the retail purchase of [MVP] sendee provided to a person whose place of primary use is in this state.” KRS 136.604. Furthermore, the General Assembly required the programming providers to collect the tax from the purchasers and to remit the proceeds, less compensation for collecting the tax, to the Commonwealth. KRS 136.606, 136.614, 136.620.
As we held above, the General Assembly cannot prohibit the Cities from collecting franchise fees from franchisees as consideration for the use of the Cities’ rights-of-way. The Cities argue that the Prohibition Provision is the only portion of the Tele-com Tax that is. unconstitutional and that this portion may be severed from the remainder of the Telecom Tax. We agree. “Whenever a statute contains unobjectionable provisions separable from those found to be unconstitutional, it is the duty of the court so to declare and to maintain the act insofar as it is valid. In that situation, a court should refrain from invalidating more of a statute than is necessary.” 16 A Am. Jur. 2d Constitutional Law, § 199 (2012).
KRS 446.090 provides:
It shall be considered that it is the intent of the General Assembly, in enacting any statute, that if any part of the statute be held unconstitutional the remaining parts shall remain in force, unless the statute provides otherwise, or unless the remaining parts are so essentially and inseparably connected with and dependent upon the unconstitutional part that it is apparent that the General Assembly would not have enacted the remaining parts without the unconstitutional part, or unless the remaining parts, standing alone, are incomplete and incapable of being executed in accordance with the intent of the General Assembly.
Severing the Prohibition Provision does not render the remainder of the Telecom Tax incapable of being executed in-accordance with the intent of the General Assembly. As we noted above, one of the reasons the General Assembly included the Prohibition Provision was to protect non-satellite program providers from being liable for collection and remittance of the Telecom Tax while simultaneously being liable for the franchise fee. The General Assembly addressed that concern in KRS 136.660(5), giving providers subject to the Telecom Tax a tax credit for any amounts paid by way of “franchise fee or tax.” Thus, severing the Prohibition Provision does not do damage to one of the intended purposes of the Act: preventing double payment by non-satellite program providers. Additionally, the tax credit provided in the Telecom Tax accomplishes another one of the General Assembly’s goals: alleviating the perceived inequity among various *365 types of program providers that was created by the federal legislation.[6]
In conclusion, we note that political subdivisions that are not within the purview of Sections 163 and 164 of the Kentucky Constitution remain bound by KRS 136.600, et seq. Furthermore, nothing in this opinion prevents municipalities from opting to forgo collecting a franchise fee in lieu of participating in the Telecom Tax scheme. Nor does anything in this opinion prevent the Commonwealth from collecting the taxes due under the remaining portions of the Telecom Tax. However, the Telecom Tax’s Prohibition Provision, KRS 136.660(l)(a)-(c), is unconstitutionally void as applied to the Cities.
CONCLUSION.
For the reasons stated above, we affirm the opinion of the Court of Appeals, vacate the Franklin Circuit Court’s order, and remand this case to the Franklin Circuit Court to enter summary judgment in favor of the Cities consistent with this Opinion.
All sitting..
Cunningham, Keller, VanMeter, Venters and Wright, JJ., concur.
Minton, C. J. dissents by separate opinion in which Hughes, J. joins.

. The parties filed motions for judgment on the pleadings; however, they attached exhibits to their pleadings. Because the exhibits constituted matters outside the pleadings, and the court considered those exhibits in rendering its judgment, we treat the court’s order as a summary judgment rather than a judgment on the pleadings. Kentucky Rule of Civil Procedure (CR) 12.03.

. The Court of Appeals's analysis was limited to the constitutionality of the Prohibition Provision; however, it held that "the Telecommunications Tax violates Kentucky Constitution Sections 163 and 164 by prohibiting appellants from assessing and collecting franchise *359 fees.” To the extent that the COA held that the Prohibition Provision was unconstitutionally void, we affirm. However, we do not hold that the Telecom Tax in its entirety is unconstitutionally void.

. We note that the Cabinet does not join KY-CATV in its Section 181 argument.

. During the Debates, within the Municipalities Committee, Sections 163 and 164 were titled "Section 14” and "Section 15,” respectively.

. During the Debates, in the Revenue and Taxation Committee, Section 181 was titled, in part, both as “Section IS” and "Section 16”.

. We note that the agreement between the city of Florence and TKR states: "So that no provider of multi-channel services ... shall receive an unfair competitive advantage, Operator shall be entitled to relief from competition as follows. If a competing multi-channel service [ ] is available to 50% or greater of the City then: ... 9. Operator shall have no greater responsibility to pay a franchise fee than Competitor.” Thus, Appellants' concern that different MVP providers would pay unequal amounts appears unwarranted, at least as to the city of Florence.