MINTON, C.J.,
DISSENTING:
I respectfully dissent from today’s decision striking down portions of the Telecom Tax because I believe the majority reaches its result by engaging in an overly broad interpretation of implied local powers inconsistent with Sections 163 and 164 of the Kentucky Constitution. To me, the only power clearly conferred by our state constitution to localities in this field is the power to grant franchises themselves. I am satisfied that, characteristic of many other populist reforms in the 1891 Constitution, the document extended localities the ability to grant franchises to curb cronyism and corruption. But I must dissent from the majority’s holding because the text of our constitution simply does not support the conclusion that these particular provisions cede to local government the absolute and exclusive power to levy franchise fees.
The majority states that we must construe the constitutional provisions at issue in a manner that carries out the intent of the framers through a thorough analysis of both “the letter and the spirit of the law.” Grantz v. Grauman, 302 S.W.2d 364, 367 (Ky. 1957). Then moving past the text of the constitutional provisions themselves, it draws excerpts from the Constitutional Debates to create the critical basis for its holding. Doing so, the majority declares that our framers clearly intended to limit this franchise-fee-levying power exclusively to local governments. The result of this imaginative reconstruction clouds the Constitution’s text and fails to give effect to the plain language of the words ratified by the people of the Commonwealth, If our search for the spirit of the law includes extraneous material unrelated to uncovering the ordinary meaning of the law, we dangerously teeter on injecting our own policy preferences into the case before us—a task most aptly reserved for the *366 legislative branch. Only the text of the 1891 Constitution was ratified. And our textual tools of constitutional construction are perfectly capable of resolving this case without invalidating an otherwise properly enacted piece of legislation.
The issue in this case is, of course, whether Sections 163 and 164 of the Kentucky Constitution cede to municipalities the inalienable power to assess franchise fees or whether that power remains dormant with the General Assembly to use or delegate as it deems appropriate. I agree wholeheartedly with the majority’s analysis of Section 163 that any company operating what is now considered a public utility may conduct its business—and occupy public rights-of-way in perpetuity—only with consent of local legislative bodies. I further agree with the notion that this provision represents a clear statement that under our current constitutional structure, the ability to grant franchises to public utility companies is solely a local prerogative; it is a power given to local governments that may not be usurped by the General Assembly. That is also the only local function clearly and plainly extended by the terms of the text. But the power to assess franchise fees, if there is one, must therefore necessarily be an implied power derivative of the locality’s power to grant the franchise itself.
To me, construing Sections 163 and 164 to include this implied power defies our established norm of constitutional construction. As a general rule, “a city possesses only those powers expressly granted by the Constitution and statutes plus such powers as’are necessarily implied or incident to the expressly granted powers and which are indispensable to enable it to carry out its declared objects, purposes, and expressed powers.” City of Bowling Green v. T & E Elec. Contractors, 602 S.W.2d 434, 435 (Ky. 1980) (emphasis added). And if there are any doubts as to the existence of a particular municipal power, such doubt is always resolved against its existence. See City of Horse Cave v. Pierce, 437 S.W.2d 185, 186 (Ky. 1969). It is clear that our law favors a presumption against implied powers to municipalities; all local powers are either (1) expressly delegated through the state constitution or by act of the General Assembly; or (2) both necessary and indispensable to enable it to carry out an already properly delegated power.
To me, the clarity of the constitutional delegation ceases at the moment a locality awards a franchise. Any implied powers beyond the grant itself are open to speculation. The ability to assess recurrent franchise fees is not necessary to a city’s ability to grant a franchise and it is certainly not indispensable. But even if I could be persuaded that it makes sense to find this implied local delegation, our constitutional precedent constrains me, in questionable cases such as this, to resolve any ambiguities against local delegation. And moreover, we have previously held that the General Assembly still retains great control over the local franchise-granting process. While the city possesses the sole power to grant the actual franchise or not, the General Assembly may regulate nearly all of the terms of the deal.
In Kentucky Utilities Co. v. Board of Com’rs of City of Paris, we articulated that though localities are the sole governing body with the power to grant franchises, the General Assembly may dictate how they exercise that power. 254 Ky. 527, 71 S.W.2d 1024 (1933). This case upheld a 1926 law enacted by the General Assembly requiring municipalities to provide for a sale of a new franchise at least 18 months prior to the expiration of the current franchise and required the franchise to be awarded to the “highest and best bidder.” *367 Id. at 1026. Our predecessor court recognized that the power to grant a franchise is an act of sovereignty, traditionally reserved to the legislative body, but limited in this instance by the state constitution, which limits this legislative function by reserving the decision to grant franchises to local municipalities. Id. at 1026-27. See also McQuillin’s Municipal Corporations § 1748 (2nd ed.).
The court then appropriately recognized the crucial question: how far have “the people by their Constitution ... stripped from their legislature such power and given it to local bodies, here municipalities?” Id. at 1027. A fair reading of this case supports the proposition that Sections 163 and 164 only grant exclusive powers to determining who physically occupies its right-of-way. By upholding the 1926 statute, we unavoidably ruled that the General Assembly may still intervene in matters of franchise and may dictate how municipalities exercise this discretion by exercising a “dormant power” it always retained. Though the Telecom Tax certainly presents a different context, the legislature is still injecting itself into the franchise process and in a way not inconsistent with the stated terms of the constitutional text.
To resolve this case, all we must do is to simply apply a discerning eye to the words enshrined as Kentucky constitutional law. And those words seemingly do not cede the taxing power of the Commonwealth to local governments as the majority declares. Because I believe the majority decision over-implies powers to localities in contrast to our stated method of constitutional construction, I must respectfully dissent.
Hughes, J. joins.